## MARTIN VS. VEEDER.

*Contract construed—Dependent covenants—Champerty.*

1. V., in consideration of one dollar, and also of the covenants of M. in the same instrument, covenanted to convey a specified 'part of a certain tract of land to which he claimed a right of pre-emption, as soon as he should have perfected his entry of said land at the state land office; and M. (who was an attorney at law), in consideration of said agreement, covenanted on his part " to render all necessary services in procuring the allowance" of V.'s claim to enter the land. *Held,* that M. was not entitled to a performance of V.'s covenant, without showing a prior substantial performance of his own.

2. When the contract was executed, there was no law allowing an appeal from the decision of the register of said land office upon an application to enter land. Subsequently an act was passed (ch. 1, Laws of 1853) authorizing such an appeal to the circuit courts of the state. M. having procured a decision of the register allowing V. to enter the land, an appeal was taken, and the question

litigated in the circuit and supreme courts. *Held*, that the contract having been entered into with knowledge of the power of the legislature to provide for such an appeal, M. could not enforce the execution of a deed to him from V. (after the latter had established his right and obtained a patent of the land), without showing that he had rendered the necessary services for V. in conducting such litigation.

3. It is doubtful whether M. was bound to pay the purchase price of the land on V. perfecting the entry.

4. Whether the contract above stated was not *champertous, quære.*

APPEAL from the Circuit Court for *Juneau* County.

The defendant, *Veeder*, on the 20th of November, 1852, was, and for a long time previous had been, in possession and occupation of a tract of land in Columbia county in this state; which was a part of the land granted to the state by an act of Congress in 1846 to aid in the improvement of the Fox and Wisconsin rivers, and accepted by the state by an act approved August 8, 1848. *Veeder* had filed with the register of the state land office, established at Oshkosh for the sale of the land granted in aid of said improvement, a pre-emption claim to said tract. On said 20th of November, 1852, he and the plaintiff entered into a contract under seal, whereby the former, "in consideration of one dollar, as also of the covenants herein mentioned to be performed by the party of the second part," agrees to convey to the latter by deed, one undivided third part of said tract, " as soon as said party of the first part shall have perfected his entry thereof at the state land office," * * * and the plaintiff "in consideration of the covenants aforesaid, agrees on his part to render all necessary services in procuring the allowance of the claim of the party of the first part to enter said land, free and clear of any payment or recompense other than the covenant to be performed as aforesaid by the party of the first part."

Afterwards one Joshua J. Guppy (claiming to act, as county judge of Columbia county, in trust for the settlers on said tract), and also one Nancy Mars, respectively, made claim to enter said land. After a hearing of these several claims before the register of said land office, he rendered a decision in favor of

*Veeder.* The plaintiff gave his personal attention to the prosecution of the defendant's claim before the register, and employed counsel to conduct the same, expending therefor $660. When the register's decision was made, *Veeder* paid the preemption price of the land, and had it entered in his name; and the complaint alleges that he made such payment "without any notice to the plaintiff, and with the fraudulent view of defeating his right under the contract  *  *  well knowing that the plaintiff then was and always had been ready and willing to enter said land for said *Veeder*, and to pay said sum of money; and also well knowing that such payment was not necessary under the law, until after the adjudication of the appellate tribunal;" and "that the plaintiff is now and always has been ready and willing to pay said sum for the entry of said lands." The other two contestants appealed from the register's decision to the circuit court of Columbia county, in pursuance of the provisions of ch. 1, Laws of 1853. The court having rendered a judgment adverse to *Veeder*, he appealed to the supreme court, where the judgment was reversed. The judge of the circuit court having subsequently refused to make an order requiring the register of the state land office to issue to *Veeder* the usual certificate of entry for the land in question, the latter applied to the supreme court and obtained a *mandamus* requiring said judge to make such an order, and the writ having been obeyed, the certificate was issued, and *Veeder* subsequently obtained from the state a patent for the land. The plaintiff afterwards demanded of *Veeder* a deed of one third of said tract, but the latter refused to execute it, on the ground that the plaintiff had not fulfilled his part of the above described contract; and this action was brought to compel the execution of such a deed. Two other persons beside *Veeder* are made defendants, for reasons which need not be stated here.

As to the proceedings in prosecution of the *Veeder* claim subsequently to the decision of the register of the land office, the plaintiff, as a witness in his own behalf, testified as follows:

" When the entry was perfected, in March, 1863, I supposed my obligation to render my personal services in the cause was fully complied with. At the time of my making the contract, there was no law authorizing an appeal from the land office, to my knowledge. Subsequently, when an appeal was taken to the circuit court, I employed Mr. Buttrick, a lawyer of Oshkosh, to attend to my interest in the case in that court, for which I paid him $125. On appeal to the supreme court, I employed James S. Brown, Esq., of Milwaukee, to attend to my interest there. I employed Mr. Brown at Milwaukee just before the term of the supreme court; it might have been after the commencement of the term." It appeared that other counsel had been employed by *Veeder*, and Mr. Brown took no part in the argument. Mr. Buttrick, for the plaintiff, testifies that he appeared as attorney for *Veeder* in the circuit court. " After the appeal [from the register] was taken, *Martin* came to me at Oshkosh, where I then resided, and desired me to go to Portage City, where said circuit court was then in session, and procure, if possible, a continuance of the cause until the next term; if not to give it such attention as I was able. I accordingly went to Portage, and stopped at the house kept by the defendant *Veeder*. I made the application for continuance, which was denied. * * *Mr. Veeder* wished me to remain at Portage and attend the argument of the case, and I did so. * * The plaintiff paid me $125 for my fees and expenses. I received no money from *Mr. Veeder*, but I believe he charged me no board while I was staying at his house." For the defendant, Alva Stewart, Esq., testified that he was a member of the firm of Pulling & Stewart, attorneys at law, at Portage City, in 1853 and the spring of 1854. " Some time after the commencement of the term of the circuit court for Columbia county, *Mr. Veeder* employed us to attend to the case of the appeal from the decision of the state land office in his case. He stated to us that he expected *Mr. Martin* there to attend to it, but he had not come, and the case was about to be reached.

I think I or Mr. Pulling went down to the court—this was in the afternoon—and stated the circumstances to the court, and got the cause put over to the next morning. We went to work that afternoon to prepare the case. *Mr. Veeder* also employed Major Clark of Baraboo to assist us. That evening Mr. Buttrick came. He said he had been sent there by *Mr. Martin* to look after the case, and that he came for the purpose of procuring a continuance or making a motion to dismiss the appeal, I don't remember which. He said he had no time to prepare the case ; he had just been employed. Mr. Pulling did the principal labor that night, preparing the case so far as our firm was concerned. I left him there at a late hour at night. Mr. Buttrick was there in the morning, but I do'nt know whether he was there when I left. The next morning a motion was made to dismiss the appeal, and it was overruled. The cause then came up for hearing, and Mr. Buttrick and Mr. Pulling took part in the argument in behalf *Mr. Veeder.* After the decision of the circuit court, Mr. Buttrick went home. * * I made up the papers for the appeal. * * Neither *Mr. Martin* nor any one representing him came there, to my knowledge. *Mr. Veeder* procured the bondsmen on the appeal. The matter then ran along until the last day for causing a return to be made under the rule of court. I went to the clerk's office, and found that he had not made any return. I informed *Mr. Veeder*, and he went to the clerk's office and paid the costs. I assisted the clerk in putting the papers in shape to go up, and *Mr. Veeder* started with them to Madison, just at night. Before the term of the supreme court, a case had to be made and served, under the rule, and he employed Judge Orton to assist in the matter. Judge Orton prepared the case and sent it up to us, and we served it. Mr. Pulling and Mr. Orton argued the case in the supreme court. About that time I quit the practice, and Mr. Pulling continued in the case. I heard the settlement between Mr. Pulling and *Mr. Veeder* for the services of the former in the case, and for the services in a

motion for re-argument of the case in the supreme court; for attending the case after it was remanded from the supreme court to the circuit court; and for proceedings against the judge of that court by *mandamus*.    The sum finally agreed on upon that settlement was $5500."    *Mr. Veeder*, as a witness in his own behalf, testified as follows : " After the decision of the circuit court, I heard nothing from *Mr. Martin* till the case was finally disposed of in the supreme court.    I attended at the argument in the supreme court, and did not see anything of him, or any one to represent him.    *    *    He did not appear when the case was remanded to the circuit court for an order on the register, and I heard nothing from him.    He never had anything to do with the *mandamus* case, that I know of."    It appeared also from the evidence that the plaintiff had never offered to pay to *Veeder* the purchase money paid by him on entering the land in question, nor any part of the expenses incurred by him in the litigation in the circuit and supreme courts.

The circuit judge, after finding the facts substantially as above stated, held that "the plaintiff was only bound to defray all the expenses of establishing the defendant's right to the land before the register of the state land office, and was not bound to litigate the case in the supreme and circuit courts ;" that no payment or tender of the purchase money by the plaintiff had been shown ; and that the plaintiff was therefore not entitled to a performance of the covenant on defendant's part; and a judgment of dismissal was therefore rendered, from which the plaintiff appealed.

*Morgan L. Martin*, in person :

1. The covenants of the parties were independent, performance on the one part not being a condition precedent, unless it was essential to enable the other party to perform.    Covenants, unlike *conditions*, afford no ground of forfeiture.    1 Hilliard, 371 ; 1 A. K. Marsh., 220 ; 11 Johns., 122 ; 20 N. Y., 463 ; 29 Barb., 658 ; 11 Pick., 151.    2. The services were rendered,

and the right of entry established. From payment for the land the plaintiff was prevented or excused by the act of the defendant. After payment had been made, defendant treated the contract as subsisting by calling on the plaintiff to render service in the circuit and supreme courts, which was not called for by the terms of the contract. By these acts defendant waived all claim for forfeiture of the contract, even under the supposition that plaintiff was bound to pay the purchase price of the land, and that this was a condition precedent to fulfillment on the part of the defendant. 14 Barb., 638 ; 20 N. Y., 199 ; 24 Barb., 174, 666; Will., 279, 295. He could only claim that compensation be made for the money paid by him, and that the sum advanced constitute a lien on the land.

*Alva Stewart,* for respondent.

COLE, J. The circuit court dismissed the complaint because the plaintiff did not show a full performance of the contract on his part, as it appeared that he had not paid the purchase money for the land. There would not seem to be room to doubt that the plaintiff was bound to show a substantial compliance with the terms of the contract on his part, in order to entitle himself to a specific performance of it on the part of the defendant. For the covenants contained in the agreement are obviously dependent in such a sense that a performance of them by the defendant depends upon the prior performance by the plaintiff; and therefore, if the contract imposed upon the plaintiff the duty of paying for the entry of the land, he might be required to show a performance, perhaps, in this particular, or excuse his default, before he should have a conveyance of the land. I am not, however, by any means clear that the agreement imposed upon the plaintiff the obligation of paying for the land, although this seems to be the construction placed upon the contract by the plaintiff himself in the complaint. It is true, the language of the contract is not very explicit upon this point, but the most obvious intention of the parties, as

gathered from the whole instrument, is that no such duty was imposed upon the plaintiff. At the same time the evidence shows most conclusively to my mind, that the plaintiff did not perform the contract in other material respects, as he had undertaken and agreed to perform, and therefore is not entitled to a performance of the contract on the part of the defendant. As I understand the instrument, the defendant undertook and agreed to convey to the plaintiff, by a good and sufficient deed, a one-third part of the premises mentioned in the complaint, as soon as his entry was perfected, solely upon the condition that the plaintiff would on his part render all necessary services in procuring the allowance of the entry and the vesting of the title in the defendant. The plaintiff was a lawyer, of eminence in his profession, and it was evidently the intention of the parties that he should give his personal attention to all litigation and business incident to establishing the rights of the defendant, as a condition to having a conveyance of his share of the land. It is claimed that the contract did not impose upon the plaintiff the duty of attending to the litigation growing out of the defendant's contested pre-emption right in the circuit and supreme courts, but only the duty of attending to the matter before the state land office. To my mind this interpretation of the contract is clearly inadmissible. The defendant agreed to convey when his entry at the land office should be perfected, and the plaintiff undertook to render all necessary services in perfecting this entry. Whatever litigation might arise in perfecting the title in the defendant, the plaintiff was to attend to personally. The proofs show, beyond all controversy, that he did not do this, but that the defendant, to protect and secure his rights, was compelled to employ other attorneys, at an expense of several thousand dollars, to attend to his suit in the circuit and supreme courts. And this litigation was all necessary to perfect the entry of the defendant; for the law (chap. 1, Laws of 1853) expressly provided, in case of an appeal under that act, that the register should issue no certificate of entry to

the successful claimant until the decision of the court should be made and certified to the register. Sec. 1. By the agreement, therefore, the plaintiff was as much bound to attend to this litigation in the courts as he was to attend to the contested claim before the land officer. For the defendant's right to enter the land was not perfect until the final decision of the case in the supreme court.

It is suggested, however, that the plaintiff was not bound to attend to the litigation of this claim in the courts, because the law allowing appeals from the decision of the register in cases of conflicting pre-emption claims was not in force when the contract was made. Therefore, it is said, no such litigation could have been in the contemplation of the parties. But it is evident the parties must be presumed to have entered into the contract with a full understanding of the power of the legislature to make such changes in the law in regard to settling conflicting pre-emption claims to lands granted the state, as it might deem necessary. Doubtless the legislature might have transferred this whole class of claims to the courts, giving the register no control over them, except the mere ministerial duty of issuing the certificate to the person who, the court should say, was entitled to it. If the legislature had made this change in the law, would it be seriously insisted that the plaintiff had performed his contract by attending to the issuing of the certificate by the register? Probably not. And yet there would be the same reason for saying that the plaintiff had fully performed his contract in the case supposed, as there is for holding that he was not bound to attend to the litigation of the contested pre-emption claim in the courts because the law granting an appeal in such a case from the decision of the register was not in force when the contract was made. I am constrained to hold, therefore, that it abundantly appears from the evidence, that the plaintiff failed to perform his side of the contract, and hence cannot insist upon a specific performance of the contract on the part of

the defendant. Mr. Justice DOWNER, however, while enter-taining some doubts upon this ground, thinks the judgment should be affirmed because the contract was champertous. The common law in regard to champerty, with such qualifications as the modern authorities have established, has been held to be in force in this state. *Barker v. Barker*, 14 Wis., 131. The reason and policy of the rule of the common law certainly con-demn this agreement as being champertous. It is true the mat-ter or thing in dispute was a contested pre-emption right then pending before a state land office; but an agreement to prose-cute this right until it was allowed, and receive a one-third part of the land as a reward for the services, would seem to be a palp-able violation of the principles of law in reference to champer-ty and maintenance. If the reason of the rule is, that persons having no interest in the matter in dispute shall not contract for an interest upon condition of carrying on the suit or con-troversy, because to do so encourages strife and litigation, then, as already observed, the policy of the law applies as well to a contested pre-emption right as to a strict action at law. And therefore my decided impression is, that this agreement is void for champerty. But I have not examined that question as ful-ly as I should have done were I not entirely clear that the plain-tiff has failed to show that he has performed the contract on his part so as to entitle himself to a specific performance of it from a court of equity.

*By the Court.*—The judgment of the circuit court is affirmed.