Drew, Administrator, vs. Baldwin and another.

*February 7 — February 24, 1880.*

DEED.   *(1) Conditions precedent or subsequent?*
EVIDENCE:   *(2) Of a reëntry as upon forfeiture.*

1. A deed of conveyance from parents to daughter, after the usual granting and *habendum* clauses, declares that the "conveyance is not to become *absolute* until the decease" of both grantors, and then only on this condition, that the grantee, her heirs, etc., shall cultivate the land in a good

and farmer-like manner, and shall deliver to the grantors, or either of them, annually, during their or either of their natural lives, one-third of the annual product thereof. The consideration expressed in the deed is one dollar, and the "reservations and rents hereby reserved." *Held,* that the conditions named are conditions *subsequent.*

2. The grantee's father afterwards sold another farm, on which he resided, and with his family went to live on the land so conveyed, with the grantee and her husband; but does not appear to have then claimed that there had been any forfeiture. A year afterwards the grantee and her husband left the land, but returned nine years later, and lived with the father on said land for more than a year, and then again left; and the father had control of the land from the time when they first left it until his death. *Held,* that these facts are at least not conclusive of an agreement by which the deceased became possessed of the land and seized as of his first estate; and that, in ejectment by his administrator against the grantee and her husband, it was competent for defendants to show that while in possession he acknowledged their rights in the land, and did not claim it in his own right; and the grantee should have been allowed to testify, in her own behalf, for what reason she left the land.

APPEAL from the Circuit Court for *Sauk* County.

Ejectment, against *George Baldwin* and his wife, *Orissa Baldwin,* for forty acres of land alleged to have been the property of plaintiff's intestate, Noah H. Drew, at the time of his death, in 1873. The land had been inventoried as a part of the estate, and had been in the possession of the adminis-trator until March 16, 1878, when defendants took peaceable possession. Defendants claim to own the land by virtue of a deed from said intestate to *Orissa Baldwin.* The terms of the deed, the evidence as to other material facts, and the find-ings of fact by the circuit court, will appear from the opinion.

Without determining whether the conditions of the deed were precedent or subsequent, the circuit court rendered judg-ment for the plaintiff; from which the defendants appealed.

For the appellants, there was a brief by *Vilas & Bryant,* and oral argument by *W. F. Vilas.*

*J. W. Lusk,* for the respondent.

COLE, J.  In the consideration of this case, it seems necessary to determine whether the conveyance from the plaintiff's intestate to the defendant *Mrs. Baldwin* was a grant upon what is termed.in the law conditions precedent or subsequent.

It is claimed on the part of the plaintiff, that it was a grant upon conditions precedent, which were not performed by the defendants; consequently, that the title never passed, but remained in the grantor at his death.  On the other hand, it is insisted that the deed conveyed the fee *in præsenti*, which was liable to be defeated by a breach of conditions subsequent and entry by the grantor.  The learned counsel on both sides agree that the intention of the grantor, as gathered from the whole instrument, is to control in the construction of the conveyance.  The deed was executed and delivered on the 11th of September, 1854, and recites that Noah H. Drew and Lory Drew, his wife, of etc., " for and in consideration of one dollar to us paid, and the reservations and rents hereby reserved to be paid to us, or either of us, by our daughter *Orissa Baldwin*, wife of *George Baldwin*, . . . do hereby bargain, sell and convey unto the said *Orissa Baldwin* and to her heirs," etc., the land described.  There is the usual *habendum* clause, with a covenant of warranty.

Then follows this condition or clause: "This conveyance is not to become absolute until the decease of us both, the said Noah H. Drew and the said Lory Drew, his wife, and then only on this condition, to wit: That the said *Orissa*, her heirs, executors, administrators or assigns, shall deliver to us and either of us, annually, during our or either of our natural lives, the one-third product of said 40 acres of land, annually produced and grown thereon, to be delivered to us, or either of us, at any place at which we may reside in said town; and shall farm and cultivate the same in a good and farmer-like manner.  The one-third product, to be delivered as aforesaid, shall be one-third of each product raised or produced on the premises, and delivered at the time and in the

condition usual in cases where land is let on shares; but small grain to be delivered threshed and cleaned, in half bushel; and corn, husked."

Now, although the question is not free from difficulty, yet we think it the better construction to hold this a grant upon condition subsequent. It will be observed that it is declared the conveyance shall not become *absolute* until the death of the grantors, and then only upon the performance of the conditions named. This language implies that an estate was intended to pass by the conveyance; if this were not so, it would seem inconsistent to state that the conveyance should not be absolute until these conditions were performed.

It is familiar law that a condition precedent is defined to be one which must take place before the estate can vest. Now the intention of the grantors seems to have been to vest an estate at once in the grantee, who was authorized to take possession of the land, cultivate it in a farmer-like manner, and deliver to the grantors, or the survivor, annually, one-third of the products raised thereon. In other words, the condition, from its nature, would seem to be one subsequent, which operated on the estate already created and vested, and rendered it liable to be defeated on failure to deliver the products or work the land in the manner specified.

It is a general principle, that conditions subsequent are not favored in law, and are construed strictly because they tend to destroy estates. 4 Kent., 129; *Horner v. C., M. & St. P. Railway Co.*, 38 Wis., 165; *Nicol v. The N. Y. & Erie Railway*, 12 N. Y., 121.

Assuming then, as we are inclined to do, that the title passed to the grantee by the conveyance, does the evidence show that it became revested in the grantor, either for the non-performance of the conditions annexed, or by mutual agreement of the parties? The learned circuit judge states, in his finding of facts, that from all the evidence he was fully convinced that sometime after the deceased returned to the farm,

early in 1857, and previous to the time the defendants left, early in 1858, a mutual understanding had been arrived at between the parties, that the defendants would or should not perform the conditions of the deed, and that the deceased for that reason should and might retain possession, as he did, which was equivalent in law to entry for condition broken. Certainly, the evidence indisputably shows that the deceased, who had been living in Prairie du Sac, sold his place in the spring of 1857, and with his family went to live with the defendants on the land. But there is nothing whatever in the evidence to warrant the inference that the deceased, at this time, claimed there had been a forfeiture of the estate, and entered for a breach of condition. The two families continued to live upon the premises in the same house until March, 1858, when the defendants left the farm, and remained away until sometime in 1867, when they again returned, and lived with the deceased and his family for more than a year, and then again left.

It is clear that, from the spring of 1858, the deceased alone had control and management of this forty, with his other land, either working and cultivating it himself, or leasing it to others, until his death in December, 1873. From this continued possession of the property by the deceased, his control and management of it, together with the apparent abandonment of the farm by the defendants, the circuit court doubtless drew the inference that there must have been a mutual understanding or agreement that the defendants were not to perform the conditions of the deed, and that the deceased should retain possession, and become seized as of his first estate. Possibly such a presumption would naturally arise from these facts, unexplained; and yet it is obvious that the presumption would be destroyed by proof that the deceased acknowledged the rights of the defendants in the land, and did not claim it in his own right. There is surely some evidence which would tend to show that the deceased acknowledged some such right of the

defendants as late as 1869. The witness Dennett says that, in a conversation which he had with the deceased at about that time, the deceased said "that *George* had to have something off from the farm; something was going to *George*, and he generally let him have a hog or something in the fall when he killed his hogs."

It would be improper for us to express any opinion upon the credit which should be given to this testimony. We only refer to it to show that much depends upon the intention of the parties; on the one hand in giving up, and on the other in holding possession and controlling the property. The acts of the parties are equivocal in their character, and do not necessarily indicate an intention on the part of the grantor to reclaim the estate, or on the part of the defendants to finally abandon it. It is certain that the deceased did not originally take possession because there had been a forfeiture of the estate. Whether the possession previously commenced was held by him after 1858 in his own right, exclusive of all claim of the defendants, is a fact to our minds not satisfactorily established. And as bearing upon this point and serving to show the understanding of the parties at the time, it seems to us that *Mrs. Baldwin* should have been permitted to state the reason why she left the farm and went to live in town. This question was asked her, and excluded by the court on plaintiff's objection. The answer might, perhaps, have thrown some light on the question whether, at that time, the understanding was that the defendants should not perform the conditions of the deed, but entirely abandoned the place, or whether the deceased waived the performance on their part, and entered into some arrangement or agreement by which he was to control and manage the property himself for a time, receiving the products, until they should return and take possession. For the error, therefore, in excluding this testimony, we are inclined to think there should be a new trial. Further investigation may serve more clearly to show the real rights of the parties.

Blumer and another vs. The Phœnix Ins. Co. of Brooklyn.

*By the Court.* — The judgment of the circuit court is reversed, and a new trial ordered.