## Stoel, Executor, etc., Respondent, vs. Flanders and wife, Appellants.

*February 2 — March 1, 1887.*

*Contract to maintain parents: Mortgage: Satisfaction: Condition precedent.*

A mortgagee agreed with the mortgagors (her daughter and son-in-law), in consideration of their contract to support her and her husband in a specified manner during their natural lives, not to collect, receive, or ask for any further interest on the mortgage, *provided* the said mortgagors should perform the said contract. The agreement further stated that, *in case* the said mortgagors should perform their said contract according to the meaning and true spirit thereof during the natural lives of the mortgagee and her husband, she (the mortgagee) declared said mortgage "fully paid and satisfied and by these presents discharged of record." *Held,* that full and complete performance of the contract to support was a *condition precedent* to the satisfaction and discharge of the mortgage.

Stoel, Ex'r, etc. vs. Flanders and wife.

APPEAL from the Circuit Court for *Walworth* County.
The facts will sufficiently appear from the opinion. The
trial court held, as conclusions of law from the facts found,
that the conditions precedent contained in the conditional
release had never been performed, and that said release
was of no effect; that the defendant *George F. Flanders*
was indebted to the plaintiff, as -executor, upon the note
and mortgage, in the sum of $1,600, with interest from
September 11, 1885; that said mortgage was a valid and
subsisting lien; and that the plaintiff was entitled to judg-
ment of foreclosure and sale. From the judgment entered
accordingly the defendants appealed.

*J. V. Quarles* and *T. W. Spence*, of counsel, for the ap-
pellants, assigned as errors: (1) Directing judgment for
the full amount of the mortgage; (2) directing judgment
against the appellants without ascertaining the damages
sustained by Mary Royce by reason of appellants' breach
of their contract to support her; (3) not taking an ac-
count of the value of the support actually furnished to
Lewis and Mary Royce under said contract; (4) not direct-
ing judgment on the findings in favor of the appellants;
(5) construing the agreement as containing a technical con-
dition precedent. They contended, *inter alia*, that the
effect of the two written agreements made July 31, 1883,
so far as the mortgage in suit is concerned, was that the
mortgage should stand as security for the performance,
and *indemnity* against nonperformance, of the obligations
assumed by appellants; and that the liability to pay $1,600
in money was changed to a liability to support Lewis
and Mary Royce during their lives, and was not different
in its legal aspect than if Mary Royce had paid $1,600 in
money in consideration of an agreement that she and her
husband should be supported during their lives by the ap-
pellants, and the latter had given her a mortgage upon their
farm to secure the performance of such agreement. The

doctrine that upon the breach of an agreement to support, the injured party can proceed by action at once as though the agreement had not been made, and that upon such breach there is an entire forfeiture of the consideration for such support, and that such consideration can be recovered in a direct action for that purpose, is denied in *Bogie v. Bogie*, 41 Wis. 217. See, also, *Bresnahan v. Bresnahan*, 46 id. 385; *Bishop v. Aldrich*, 48 id. 619; *Blake v. Blake*, 56 id. 392.    To avail herself of the right to have the contract rescinded and have the benefit of the mortgage security, after part performance, the plaintiff should have brought an equitable action setting up the contract for support and its breach, and praying for rescission of the agreement, an *accounting* between the parties, and the foreclosure of the mortgage and sale of the premises to satisfy the value of the support found due.    See *Van Trott v. Wiese*, 36 Wis. 449; *Gould v. Cayuga Co. Nat. Bank*, 86 N. Y. 83; *S. C.* 99 id. 337.    But even though the action had been brought in that form, still the court should not have decreed a rescission, because it would be impossible to place the parties in *statu quo*, and because complete compensation in damages could readily be given.    One party cannot rescind a contract for a failure of the other party which is but partial, having had performance of a distinct part as a subsisting and executed consideration, but must seek his remedy in damages.    2 Parsons on Con. 697, note *g;* 2 Sutherland on Dam. 245, 246; *Burge v. C. R. & M. R. Co.* 32 Iowa, 101; *Miller v. Cotten*, 5 Ga. 341.    Again, rescission should have been neither decreed nor allowed, because there was no breach of the contract for support.    There was nothing in such contract to bind the appellants to furnish to Lewis or Mary Royce a home *with them*.    If Mr. and Mrs. Royce were dissatisfied with the accommodations at appellants' house, they were at liberty to obtain rooms and board elsewhere and ask appel-

lants to pay for the same. If appellants refused to pay, or insisted that unless they accept these provisions at their home they would not furnish them at all, there would have been a breach of the contract. But there was no such evidence or finding. It is admitted by the finding that comfortable rooms and good board were furnished. And the appellants cannot be charged with failure to perform the contract because of ill-usage, when the old people never requested a change of location where they would not be subject to the ill-treatment complained of. The right to rescind a contract is in every case *strictissimi juris*. 2 Parsons on Con. 526, 501, note *y*. Again, the agreement in this case is not unlike the one in *Peterson v. Olson*, 47 Wis. 122, and the amount of recovery should be limited to the value of the things not furnished. See 2 Greenl. Cruise, 80; 1 Jones on Mortg. sec. 388; *Fay v. Guynon*, 131 Mass. 31; *Amos v. Oakley*, id. 413; *Schell v. Plumb*, 55 N. Y. 592; *Parker v. Russell*, 133 Mass. 74; *Furbish v. Sears*, 2 Clifford, 454; *Hawkins v. Clermont*, 15 Mich. 511; *Hoyt v. Bradley*, 27 Me. 242; *Austin v. Austin*, 9 Vt. 420. On the foreclosure of a mortgage which stands as security for such a contract, the damages will not be the penal sum of the mortgage, but only what the injured party suffers by the breach. 1 Jones on Mortg. sec. 393, note 5; *Ferguson v. Kimball*, 3 Barb. Ch. 619; *Fiske v. Fiske*, 20 Pick. 499; *Wright v. Wright*, 49 Mich. 624; *Bresnahan v. Bresnahan*, 46 Wis. 385. The fact that the mortgage foreclosed in this action was given for moneys theretofore advanced to the parties, does not affect its character as indemnity against damage by a failure of the subsequent agreement to support. Again, conceding that the action was properly brought, that the contract was entire and subject to rescission, that the court might have put the parties in *statu quo*, and that appellants cannot have any advantage under the contract, they must still be held entitled to credit for what they have done

under the contract; and the mortgagees are not entitled to confiscate all they have received under it. *Burnham v. Mitchell*, 34 Wis. 117. In this case the court held the condition to be a condition precedent and applied the same rigid rule that would obtain in an action at law brought by the appellants on the contract. But the condition was manifestly inserted as security for performance, and should receive the same construction as other security clauses, which are universally held to be conditions subsequent. And the plaintiff, having come into a court of equity, must *do equity*.
· For the respondent there was a brief signed by *Dodge & Fish*, of counsel, and the cause was argued orally by *Mr. Dodge* and *Mr. T. M. Kearney*. To the point that entire and strict performance of all the conditions precedent was essential to the acquisition of any rights under the agreement, they cited 4 Kent's Comm. (12th ed.), 125; 2 Washb. R. P. 8; *Nevius v. Gourley*, 95 Ill. 206; *Brannan v. Mesick*, 10 Cal. 95; *Vanhorne's Lessee v. Dorrance*, 2 Dal. 304, 317. The acts found by the court constituted a breach of the conditions. *Bogie v. Bogie*, 41 Wis. 209; *Tracey v. Sacket*, 1 Ohio St. 54; *Oard v. Oard*, 59 Ill. 46; *Frazier v. Miller*, 16 id. 49–50.

ORTON, J. The complaint in this case is in the usual form for foreclosure of a mortgage. The note for $1,600, and the mortgage collateral thereto, bear date July 2, 1881, and were given to Mary Royce by *George F. Flanders* and *Ione A. Flanders*, his wife, the appellants. The suit was brought by Mary Royce, and she having died, it was revived in the name of the respondent, her executor. It is stated in the answer that the said *Ione A. Flanders* was the daughter and only child of the said Lewis and Mary Royce, and that they being well advanced in years, and desirous of avoiding the cares and responsibilities of active life, and at the same time to secure to the said *Ione* what-

ever should remain of their property after providing for their support, the said *George F.* and *Ione A. Flanders* executed and delivered to them the following agreement, viz.:

"This agreement, made and entered into this 31st day of July, 1883, between *George F. Flanders* and *Ione A. Flanders* of the first part, and Lewis Royce and Mary Royce of the second part, witnesseth, that for and in consideration of money, lands, and tenements heretofore conveyed, the said *George F. Flanders* and *Ione A. Flanders* shall maintain the said Lewis Royce and Mary Royce for and during their natural lives; that is to say, said parties of the first part are to furnish good and comfortable room or rooms, good and comfortable board, do their sewing and washing, take care of them when sick. -

[Signed]                   "GEORGE F. FLANDERS.
                           "IONE A. FLANDERS."

It is further alleged in said answer that, at the same time, and as part and parcel of said agreement, the said Mary Royce, for the consideration aforesaid, made and delivered to *George F.* and *Ione A. Flanders*, the following agreement, to wit:

"Know all men by these presents, that I, Mary Royce, of Burlington, in consideration of a contract made and entered into on this day by *George F. Flanders* and *Ione A. Flanders*, to support and maintain the said Mary Royce and Lewis Royce during their natural lives, do hereby declare that I have agreed with the aforesaid *George F. Flanders* and *Ione A. Flanders* not to collect, receive, or ask for any further interest on a certain mortgage, executed by *George F. Flanders* and *Ione A. Flanders* on the 2d day of July, 1881, and recorded July 6, 1881, at 5 o'clock P. M., in vol. 47 of Mortgages, page 590; *provided,* that the said *George F. Flanders* and *Ione A. Flanders* shall perform on their part the contract referred to and before mentioned; *and in case*

that the said *George F. Flanders* and *Ione A. Flanders* shall perform the said contract according to the meaning and true spirit thereof, during the natural lives of said Mary Royce and Lewis Royce, I, Mary Royce, do declare said mortgage fully paid and satisfied, and by these presents discharged of record.

"In witness whereof I have hereunto set my hand and seal this 31st day of July, A. D. 1883,

[Signed]                          "MARY ROYCE.  [Seal.]
"In presence of
  "L. B. COLTON.
  "J. B. WHEELER."

It is also alleged that the mortgage referred to is the same as the one in suit, and that the appellants have in all respects kept and performed the conditions of said agreement up to the 10th day of September, 1885, when the said Mary Royce refused to accept their further care and support, and that they are ready and willing and offer to perform the contract if the said Mary Royce will accept the same, and that they maintained the said Lewis Royce until he died, July 23, 1884, and the prayer is that the action may be dismissed.

The plaintiff, in reply, admitted the execution of said agreements, and alleged that the said defendants have neglected and entirely failed to keep said agreements on their part, by neglecting and failing to furnish the plaintiff, Mary Royce, with comfortable room or rooms, and with good and comfortable board, and by neglecting to take proper care of her, and misusing and ill-treating her in various ways, and that the condition upon which said release was given has not been complied with and is therefore of no force or effect. The evidence upon the trial has not been made part of the record.

The circuit court found "that, from and after the execution of said agreement for maintenance and said conditional

satisfaction, up to the death of said Lewis Royce, to wit, the 23d day of July, 1884, the said defendants did keep and perform their said agreement by maintaining and providing for said Lewis Royce and Mary Royce in manner and form as required by said contract; that from the 23d day of July, 1884, down to the 10th day of September, 1885, said Mary Royce lived and received her support at the house of the defendants, at which time said Mary Royce left such house permanently by reason of the facts set forth in seventh [following] finding, and that she was prevented from leaving prior to that time by the acts of the defendants in confining her as set forth in said seventh [and following] finding." "*Seventh.* That the defendants have failed and neglected to perform the contract referred to in said conditional discharge, according to the meaning and true spirit thereof, in that said defendants did ill-treat and abuse the said decedent, Mary Royce, both by application of personal violence and coercion, and by confining and imprisoning her and depriving her of her personal liberty without any sufficient reason, justification, or excuse, and did thereby render the continued residence of the said Mary Royce with them uncomfortable, and her life with them unendurable; whereby said Mary Royce was compelled to and did make her escape and depart from the residence of the defendants on the 10th day of September, 1885."

It is to be presumed that the evidence most fully justified these findings, and the case must be decided upon the findings and the pleadings alone, as the evidence is not before us. The two contracts (and we may as well call them contracts, without any more technical designation) were very informally and inartistically drawn, but their true meaning and construction are not at all difficult; and for authority upon all the material questions raised we need not necessarily look outside cases decided by this court.

The first agreement to maintain in the manner specified

Lewis Royce and his wife, Mary, during their natural lives, was based solely, so far as appears therein, upon the consideration fully executed and satisfied of money, lands, and tenements, paid and conveyed by Lewis Royce and his wife, or by one of them, to the defendants, and such consideration may be presumed to have been liberal and ample, and to the extent of all the property and means of at 'least Lewis Royce; for it does not appear that upon his death he left any estate to be administered. Such a disposition of their property was probably prompted by their natural love and affection for, and implicit confidence in, their daughter and only child, *Ione A. Flanders*, as well as by their desire to secure their permanent and comfortable support and maintenance during the remainder of their lives, without anxiety, toil, or care, in the home of their child, whose natural love and affection would be their best security. In the construction of such contracts, "according to the meaning and true spirit thereof," these natural relations of the parties must be considered and have much weight. "Conveyances of property by aged and infirm people to their children, in consideration of promised support and maintenance, are somewhat peculiar in their character and incidents, and must sometimes be dealt with by the courts on principles not applicable to ordinary conveyances," said Mr. Justice LYON, in *Bogie v. Bogie*, 41 Wis. 209. See, also, *Tracey v. Sacket*, 1 Ohio St. 54; *Oard v. Oard*, 59 Ill. 46; *Frazier v. Miller*, 16 Ill. 49. There can be no question but that the desire of the parents to secure for the remainder of their lives a permanent and comfortable home with their daughter and her husband, whose natural affection would be likely to prompt them to care and kindness and gentle treatment in their old age, was one of the main inducements for the conveyance of their property and of their entering into this contract.

It seems that Mary Royce, the mother, still retains some individual and private means of support in this mortgage

now in suit, given to her in 1881. This mortgage forms the subject of the second contract, between herself alone and *George F. Flanders* and *Ione A. Flanders.* It is most clearly a separate and independent contract, in which Lewis Royce had no interest except as a mere beneficiary. It refers to the first contract only for the consideration and conditions, and the first contract makes no reference whatever to this contract. Its being of the same date has no significance whatever; for it would have the same meaning and effect if made at any other time subsequent to the first contract. The first contract was perfect and complete and an entirety in itself; and so of this contract, except by its mere reference to the first for its consideration and conditions, which might as well have been embodied in it.

We now have sufficiently the nature of these transactions to determine the main and ably contested question in the case, which is whether the condition of the maintenance and support of Lewis and Mary Royce during their natural lives in the manner specified, and of the performance of said first contract according to the meaning and true spirit thereof, is precedent or subsequent to the satisfaction and discharge of said mortgage. We do not think that this question is at all difficult. It is most unquestionably a condition precedent.

1. The defendants so treat it in their answer. They admit the condition, and aver performance, or willingness and readiness to perform, and they do not claim any compensation or apportionment of damages for part performance. They do not aver any delivery to them of the note and mortgage or either of them, and they ask no judgment for such delivery or for the satisfaction and discharge of the mortgage, or any judgment except the dismissal of the action. There is the usual prayer for general relief, but no facts are stated which entitle them to any other relief than a dismissal of the action. They are willing to leave the

mortgage in the possession of Mary Royce as her property until they do fully perform their contract, by offering to so perform if Mary Royce "will accept the same," and they do not ask for the satisfaction and discharge of the mortgage until they do fully and finally perform by supporting and maintaining her during the remainder of her natural life in the manner specified in the contract. The answer is only consistent with full payment or no payment of the mortgage, by not pleading part payment or part performance, and by averring that there has been no breach of the contract on their part and that there has been a breach on her part by her refusal to accept their further care and support. They rest their case upon full performance, or what is equivalent to full performance, as a condition precedent to their right to a satisfaction and discharge of the mortgage.

2. The facts and circumstances attending the making of this last contract show a design to make a full performance of the first contract a condition precedent to the satisfaction and discharge. Lewis and Mary Royce had parted with their money and conveyed their lands and tenements to the defendants, and the full title thereto had become vested in them upon condition subsequent or without condition, and their security therein for the performance of the contract was lost. Mary Royce held this mortgage against the defendants as her only resource against absolute want or dependence. She voluntarily, so far as it appears, made this contract with the defendants, as an additional and interested motive and inducement for them to perform their contract, and retained the mortgage as her only security that they should do so. If, as claimed by the learned counsel of the appellants in this court, the right to the satisfaction and discharge of the mortgage had become vested upon a condition subsequent, then what was the use of such a condition, so far as any security to Mary Royce was concerned, after the mortgage had been paid, satisfied, and discharged?

The fact of Mary Royce holding this mortgage, probably for money loaned, shows that she was a woman capable of doing her own business, and it would not be consistent with her possession of common sense to make this condition of maintenance and support of herself and husband other than a condition precedent to the satisfaction and discharge of the mortgage.

3. The language of the contract itself makes it a condition precedent. Mary Royce agrees "not to collect, receive, or ask for any further interest on the mortgage, *provided* that they shall perform on their part the contract referred to," which clearly means so long as they shall perform. The performance is most clearly a condition precedent to the agreement not to collect, receive, or ask for the interest. Then the language is, "*and in case* that the said *George F. Flanders* and *Ione A. Flanders* shall perform the said contract," etc., " I, Mary Royce, do declare said mortgage fully paid," etc. This language implies the performance of the contract before the satisfaction of the mortgage, and this, together with the fact that the estate or property has not become vested in the person whose prior duty it is to perform the condition, are the invariable tests of a condition precedent, and in such a case the performance of the act agreed to be done must precede the taking effect of the dependent contract for any purpose. A person has the right to make his contract so as to make his receiving any benefit whatever from it depend upon his own previous performance of some act, and neither the courts of law or equity can relieve him from this position any more than they can make contracts for the parties. " Conditions precedent are such as must be punctually performed before the estate can vest." Wood's Inst. 235; *Rogan v. Walker*, 1 Wis. 527. When one party has omitted to perform any act which constituted the consideration of the other party's undertaking, or any part of it, and which was to precede

in order of time the performance of the other party, the decisions are uniform that no recovery can be had upon the contract. *Kellogg v. Nelson*, 5 Wis. 125. In that case there had been part performance, and some of the wheat delivered, without requiring the other party to furnish the bags to carry it in, which was held to be the condition precedent to the delivery. This case shows how strict must be the performance of a condition precedent before any recovery can be asked.

In *Warren v. Bean*, 6 Wis. 120, the parties had made up an issue by the pleadings of performance of the condition precedent, which was not sustained, but the trial court had allowed evidence of performance of the work beyond the time mentioned in the contract, and of enlargement of the time, and of an acceptance of the work. It was held that this was error, and that, on the pleadings, full performance within the time was required. The performance of the condition precedent is required before any performance by the other party can be demanded. *Martin v. Veeder*, 20 Wis. 466.

In *Hudson v. McCartney*, 33 Wis. 331, payments for the work were to be made only when the same was done to the full and complete satisfaction of the superintendent, and upon his certificates. It was held that the plaintiff could not recover without the performance of this condition precedent, even if he had done the work according to the contract in other respects. In the able brief of Messrs. Hastings and Greene in that case, the English, and many American, authorities are collated to the point that a condition precedent must be fully performed before the dependent obligation or agreement can have any effect whatever, and such is the discussion in *Redman v. Ætna Ins. Co.* 49 Wis. 438.

In *Drew v. Baldwin*, 48 Wis. 529, the distinction is well and clearly made that a condition *precedent* must be per-

Stoel, Ex'r, etc. vs. Flanders and wife.

·formed before the estate can vest, and, because in that case the estate was conveyed and vested at once and before the condition was to be performed, it was held to be a condition subsequent, and that such was the intention of the parties. See, also, the authorities in the brief of the learned counsel of the respondent. The authorities are uniform in support of the nature and effect of a condition precedent as above laid down.

The learned counsel of the appellants complain that such a rule is arbitrary and harsh, and in many cases may work great injustice. If so, it is the fault of the party who assumes by his contract the strict and full performance of the condition before the undertaking or obligation of the other party shall take effect or have any force whatever. The only remedy or avoidance of the injustice complained of is that the party must not make such a contract, the legal effect of which he is presumed to have known. In view of all the authorities, there can be no doubt that the defendants were bound to the support and maintenance of Lewis and Mary Royce during their natural lives in the manner specified, before they can insist upon the satisfaction or discharge of the mortgage or any part thereof. The agreement of Mary Royce, that she would not collect, receive, or ask for any interest upon the mortgage only while the condition was being strictly performed, conclusively shows that the mortgage not only remained, but should remain, the property of Mary Royce until the full and complete performance of the condition, or until lawfully excused from such performance. I need not specially notice the authorities cited by the learned counsel of the appellants on this point, for they were all cases of condition *subsequent,* and not applicable. In such cases it may be that the claims, for the first time asserted in this court in this case, that the defendants should in equity be allowed a proportionate compensation for their part performance, and that the actual

damages for the breach of the condition should be ascertained, may be considered, for such conditions are not favored in the law, and are construed strictly, because they tend to destroy estates already vested. *Drew v. Baldwin, supra.* But such claims have no place in such a case as this is, upon the facts found and conclusions of law, or upon the pleadings.

Finally, there is no chance for doubt or hesitation in holding in this case that the defendants not only failed to perform the condition but placed themselves, by their most wicked and unnatural conduct and cruelty towards Mary Royce, in such an attitude towards her that neither law nor humanity would allow them to attempt any longer to support and maintain her in the house and home of her daughter, where, under the contract, she had a right to remain. They most signally violated their contract, both in letter and spirit, by a course of treatment so cruel and inhuman as to shock the sensibilities of mankind. "They *ill-treated* and *abused* her, both by the application of *personal violence* and *coercion*, and by *confining* and *imprisoning* her and depriving her of *personal liberty* without any sufficient reason, justification, or excuse, and thereby rendered her continued residence with them *uncomfortable*, and her life with them *unendurable*, whereby she was compelled to and did make her *escape* and depart from their residence." The defendants, by their answer, allege that Mary Royce refused to accept their further *care* and *support*, and they tender her a further performance of their contract if she will accept the same. This comes very near "adding insult to injury." The finding of the court on this subject is a *verity* in the case, and cannot be questioned. They now ask in this court, by their learned counsel, that they be compensated, on principles of *equity*, for the support and maintenance already rendered (and for *such* support and care). The engagement of able and distinguished counsel in their behalf

was properly due to the presumption of innocence, and their valuable services have been consistent with the safeguards which the law throws around even the guilty; but, having done their full duty, they were unable to excuse or palliate such atrocious conduct, or to show that by it the defendants had not violated the condition *precedent* to their having any interest in the mortgage except to *pay* it. It is very unpleasant to the courts, as well as to the counsel, to be compelled to pass upon such a record of infamous conduct, and it is to be hoped that such a case of cruelty by a child towards an aged mother may never again occur.

*By the Court.*— The judgment of the circuit court is affirmed.