Lucien B. Adams, *et al. vs.* The County of Logan.

*Agreed case from Logan.*

A conveyance of land to a county, in consideration of the location of a county seat at a particular place, does not deprive the Legislature of the right to remove the same, whenever the public good shall require a change. Nor does such conveyance, if unconditional, give the donors of property a right of action for damages sustained, in consequence of such removal.

Even had the donors of property made an express agreement that the land should revert, in case of the removal of the county seat, it would not avail them, unless it had been expressed on the face of the deed, or in a separate instrument. Such an agreement cannot rest in parol.

At the August term, 1849, of the Logan Circuit Court, the plaintiffs filed their declaration in assumpsit, containing two general counts: one for money lent and advanced, and paid out and expended, and the other for money had and received by defendant, for the use of plaintiffs. To this declaration, the defendant filed the plea of the general issue, to which there was a joinder. A judgment was entered *pro forma* for the defendant, by Davis, Judge, in the Circuit Court, upon the agreed case, which is in substance as follows: That, in consequence of the act of the General Assembly, entitled "an act to establish the counties of Menard, Logan and Dane," approved February 15th, 1839, S. M. Tinsley, one of the plaintiffs, proposed, upon the condition that the county seat for Logan county should be at Postville, to erect a framed building, upon certain specified lots, which he would give to the county for a court-house, and other county purposes. M. L. Knapp, another of the plaintiffs, proposed to give two blocks of ground, upon the same condition. That the commissioners named in the said act, made said location temporarily at Postville. That Tinsley built the house as he proposed, and that Knapp conveyed the blocks of ground as he proposed. That afterwards the General Assembly passed " an act to locate permanently the seat of justice of Logan county," approved February 17th, 1841; upon which the proprietors of Postville, in view of the provisions of the last named act, which required a donation of $3,000, on the permanent location of the seat of justice at Postville, proposed, first, that they be allowed the amount already paid for building the court-house, and for the several lots by them previously given to the county, the sum of $3,000. In addition to which they gave three additional lots; and in lieu of one of the blocks given to the county, the plaintiffs gave their notes for $600, if the same should be reconveyed to them.

This proposition was accepted by the county commissioners, by an order entered upon their records. That on the same day deeds of conveyance were executed by the proprietors, (the present plaintiffs) of the lots given to the county, with court-house, &c., but these contain no conditions or reservations differing from ordinary deeds in fee simple. That by a subsequent act of the General Assembly, authorizing a vote of the people for that object, the seat of justice for Logan county was re-

moved from Postville to Mount Pulaski. That afterwards, said lots and court-house were sold by the county for three hundred dollars, and the money was received by the county. That the plaintiffs, after the seat of justice was fixed at Postville, and before its removal, had sold a large portion of their real estate in the town, but still were the owners of a large amount; and that if the Supreme Court should be of opinion that the plaintiffs, or any of them, in any character which they or any of them have, are entitled to recover on the pleading and proofs, a judgment is to be rendered according to the rights of the parties, it being the intention that the case should not go off on any collateral question.

The error assigned is, that the Circuit Court erred in giving judgment for the defendant.

S. T. Logan, and Stuart & Edwards, for plaintiffs.

Lincoln & Herndon, for defendant:

The plaintiffs in error in this case, made these donations with a knowledge that the county seat was not permanently located at Postville; and having this knowledge, if the county seat was removed, they have no cause to complain. They made these donations with the hope that it would advance their individual interests. Laws of 1838 and 1839, p. 106, section 8; Laws of 1846, page 31. This last act was passed at the special request of plaintiffs in error, and the county of Logan did not ask for it, nor participate in its passage. The original gift was immoral— against public morals and founded in corruption. It was to make officers do their duty. 1 Breese, 103; 2d Part ibid, 10; Story on Contracts, sections 569–70; ibid, 571–72. Their remedy is against others, and not against the county. 8 Johnson, 385; 9 ibid, 73.

C. Emerson, on same side:

The conveyance to the county vested the property in the county. Revised Laws, 132. The building the court-house was a voluntary act, and a donation, and cannot give the plaintiffs any cause of action. 5 Blackford, 182. The court-house, when built, became a part of the realty, and went with the land. The removal of the county seat did not divest the coun-

ty of its property, or give any cause of action to the plaintiffs, against the county. A permanent location of a county seat is no undertaking that it shall remain where located perpetually, or for any definite length of time. See the various acts locating county seats. 1 Blackford, 285. The location and removal of the county seat of Logan county, was the act of the legislature, and not the act of the county. County commissioners have no power to consent that county seats shall not be removed. County seats are located, and their locations changed, for the public good. 4 Blackford, 208.

Opinion by Mr. Justice CATON:

We are of opinion that this action cannot be maintained. It is not, nor can it be denied, but that the Legislature still retained complete control over the county seat of Logan county, notwithstanding all that had been done fixing it at Postville. Nor was there any covenant or agreement that the money should be repaid, or that the lands should revert, which had been donated to the county, by the proprietors of Postville, under the several acts of the Legislature, to induce the location of the county seat at that place. When the money was paid and the land conveyed, the donors knew that the county seat might, when the good of the community should require it, be changed; and it must be presumed that they acted in view of such a contingency. Had they intended to guard against the consequences of such a removal, they should have made an express agreement or reservation to that effect, in the deed. So far from that, they made an absolute conveyance, without any reservation whatever. Even had an express agreement been made at the time of the conveyance, that the land should revert, in case of the removal of the county seat, it could not be proved by parol, but should have been expressed on the face of the deed, or at least in a separate writing. But here we are asked, in the absence of a parol agreement, to infer one, from the circumstances of the case. Had the deed upon its face contained a reservation, or had any specific purpose for which the land was conveyed been declared, from which a reservation might be implied, then we should have something upon which we could act, and we might, possibly, so far disregard the literal expressions of the conveyance, as to give effect to the spirit and intent of the

transaction. Such was the case in Police Jury *vs.* Reeves, 18 Martin's Louis. Rep., 221, where land was conveyed on condition that the public buildings of the parish should be erected thereon; and it was held to revert by the subsequent removal of the seat of justice of the parish, by the Legislature. But in this case, there was no such purpose declared. The case of Armstrong *vs.* The Board of Commissioners, 4 Blackford, 208, is a stronger case than the one before us. There, the commissioners appointed by an act of the Legislature, to relocate the county seat of Dearborn county, in pursuance of the authority vested in them, accepted the proposition of certain parties, who proposed to furnish money to build a court-house, in consideration that "they, the said commissioners under the said act, would make the said town of *Lawrenceburgh, forever*, the permanent seat of justice of said county." The location was accordingly made, and the money advanced; and yet it was held that the Legislature, by subsequently removing the county seat, violated no legal rights of the parties, for which they could obtain redress.

It is undoubtedly true, that the donors made this donation to the county, in order to secure the location of the county seat at Postville, with the expectation of being more than reimbursed, in the enhanced value of their other property in the place; and it is equally beyond doubt, that all the property in the place, as well theirs as that of others, may have more or less deteriorated in value, by the removal of the seat of justice. But it appears, that while the county seat remained at Postville, they sold to individuals a large portion of their real estate in and about that place; and in that way they have, undoubtedly, in part, if not entirely, been reimbursed, for the bonus which they gave the county. Should we allow them now to recover of the county, they would be twice reimbursed. Those who have bought property of them, or even of others, at the enhanced prices occasioned by the location of the county seat, have as much cause to complain as they have. Those to whom they have sold, have no means of recovering from them any portion of the amount which might be recovered from the county; and yet, if there is any equity in any portion of this claim, such purchasers have an equal right to a rateable proportion of what the county should be obliged to pay. If the coun-

ty has received money, which *ex equo et bono* the county ought not to retain, how shall we determine to whom it equitably belongs. The Court that should undertake to determine this, would find itself inextricably involved in a labyrinth of inquiries.

But the plaintiffs have no legal right to claim damages for the loss which they have sustained, by this legitimate exercise of power by the Legislature and the people. With equal propriety might one who has purchased canal lands, in view of the present location of the canal, claim to recover damages, in case the canal should be so changed as to diminish the value of his purchase. Such a claim would hardly be thought of.

In this case, the very fact that the donors gave an absolute and unconditional deed, shows that they expected to take their chance for retaining the county seat. Knowing, as they must have known, that the Legislature had the right to change the seat of justice, whenever the public good should require it, they might have insisted in their contract that the title should revert, in case of a removal. But there is no such intimation, in any of their written proposals presented to the commissioners, during the negotiation. Had there been, perhaps Postville never would have been a county seat. The donation being unconditional, may have turned the scale in their favor. Be that as it may, we cannot now make a new bargain for them, and impose a condition where there is none.

The judgment of the Circuit Court must be affirmed, with costs.

*Judgment affirmed.*