NEW YORK & E. R. CO. (WINANS v.). See Case No. 17,863.

NEW YORK & H. R. CO. (WINANS v.). See Case No. 17,864.

---

## Case No. 10,198a.

NEW YORK & L. STEAMBOAT CO. v. WILSON.

[Nowhere reported; opinion not now accessible.]

---

NEW YORK & L. B. R. CO. (EASTON v.). See Case No. 4,259.

NEW YORK & N. H. R. CO. (ANDERSON v.). See Case No. 360.

NEW YORK & N. H. R. CO. (ILLINS v.). See Case No. 7,010.

---

## Case No. 10,199.

NEW YORK & N. H. R. CO. v. NEW YORK.

[4 Blatchf. 193.] [1]

Circuit Court, S. D. New York.   Sept. 7, 1858.

RAILROADS—MUNICIPAL REGULATIONS—RESERVATION AS TO MOTIVE POWER—LAWFULNESS—CONSTRUCTION OF CHARTER.

1. By the act of the legislature of New York, passed April 25, 1831, incorporating the New York and Harlem Railroad Company (Sess. Laws 1831, c. 263), the consent of the authorities of the city of New York was required to the construction of the road within the city, and the act authorized those authorities "to regulate the time and manner of using the same." The authorities consented to the construction of the road within the city, and, at the same time, the company covenanted that the authorities should retain "the right of regulating the description of power to be used" in the propulsion of cars within the limits of the city: *Held*, that the condition so annexed to such consent was authorized by said act.

2. An unrestricted power to make a grant or concession enables the party to make it upon conditions.

[Cited in Pepin Co. v. Prindle, 61 Wis. 309, 21 N. W. 256.]

3. The authorities had the right to forbid the running of locomotive engines, by the company, on their road, within the city, at any time when, in their judgment, the interests of the public demanded it.

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

4. The act of the legislature of New York, passed March 29, 1848 (Sess. Laws 1848, c. 143), did not confer upon the New York and New Haven Railroad Company any greater privileges, in respect to the running of locomotive engines, within the city of New York, upon the tracks of the New York and Harlem Railroad Company, than had been, or might be, conferred on the latter company, and the city authorities have the right to prevent the running of such engines, within the city, by the former company, on the tracks of the latter company.

This was a motion for a provisional injunction, to restrain the defendants from interfering with the running of the plaintiffs' locomotive engines on their tracks in the Fourth avenue, in the city of New York, south of Forty-Second street. The common council of the city of New York passed an ordinance, on the 27th of December, 1854, declaring that no locomotive or steam engine should be allowed to run on the tracks of the New York and Harlem Railroad Company, or of the New York and New Haven Railroad Company, in the Fourth avenue, south of Forty-Second street, eighteen months after the passing of the ordinance. The board of police commissioners threatened to carry into effect that ordinance. The two companies used the same track in entering the city, the New York and New Haven Company having been authorized to use the tracks of the New York and Harlem Company, by an act of the legislature of the state of New York.

The New York and Harlem Railroad Company was incorporated by the legislature of New York, April 25th, 1831. By the first section of the act of incorporation (Sess. Laws 1831, c. 263), it was empowered to construct their road from any point on the north bounds of Twenty-Third street, to any point on the Harlem river, between the east bounds of the Third avenue and the west bounds of the Eighth avenue, &c., and "to transport, take, and carry property and persons upon the same, by the power and force of steam, of animals, or of any mechanical, or other power, or of any combination of them, which the said company may choose to employ." By the sixteenth section, it was provided, that nothing in the act should be deemed to authorize the company to construct their road across or along any of the streets or avenues, as designated on the map of the city of New York, &c., without the consent of the mayor, aldermen, and commonalty of the city, who were authorized to grant or refuse the construction of the road, and, after the same should be constructed, "to regulate the time and manner of using the same, and the speed with which carriages shall be permitted to move on the same, &c."

The common council, in pursuance of that act, passed an ordinance, giving their consent to the construction of a road along the Fourth avenue, from Twenty-Third street to Harlem river, with certain conditions annexed; and, among others, section 3 of the ordinance provided, that "the right of regulating the description of power to be used in propelling

carriages on and along said railways, and the speed of the same, &c.. be, and the same are hereby, retained and reserved." The eighth section provided, that the ordinance should not be considered binding until the Harlem Company should engage, under their corporate seal, to abide by the conditions contained therein. This engagement was entered into, accordingly, on the 13th of January, 1832.

By the sixth section of the act of the legislature of New York, passed March 29, 1848 (Sess. Laws 1848, c. 143), the New York and New Haven Railroad Company were authorized to enter upon, and run their cars and engines for passengers, &c., over the Harlem road, from the point of junction of the roads of said companies, at Williams' Bridge, in Westchester county, to the city of New York, "and as far into the said city as the said Harlem Railroad may extend, upon such terms, and to such point, as has been, or may hereafter be, agreed upon by and between said companies," "and to take, transport, and convey persons and property upon said Harlem Railroad. by the power and force of steam, or animals, or any mechanical power, or combination of the same."

NELSON, Circuit Justice. The only question which I deem it material to consider, on this motion for an injunction, is, whether or not the common council of the city of New York possessed the power to pass the ordinance of the 27th of December, 1854, prohibiting the running of locomotives on the Fourth avenue below Forty-Second street, (1) as it respects those belonging to the Harlem Company, and (2) as it respects those belonging to the New Haven Company.

It is insisted, on the part of the plaintiffs, that, under the charter of the Harlem Company, of the 25th of April, 1831, the common council, after giving their consent to the construction of the road along the Fourth avenue to Twenty-Third street, possessed no power to prohibit the use of it as authorized by said charter, namely, the carrying of property and persons, by force of steam, &c., and that, if the Harlem Company cannot be deprived of this right, neither can the New Haven Company, as they possess an equal right with the Harlem Company, under the sixth section of the act of March 29th, 1848. The plaintiffs further insist, that, even conceding the power of prohibition to exist in the common council, as it respects the Harlem Company, such power does not, as it respects the New Haven Company, come within the true meaning of such sixth section.

(1.) As it respects the Harlem Company. That company expressly covenanted, under its corporate seal, at the time the common council consented to the construction of its road, that the latter should retain the right of regulating the description of power to be used in the propulsion of cars within the limits of the city. In answer to this, it is said, that the condition thus annexed to the con-

sent was not authorized by the act of 1831. I have looked into the provisions of that act with some attention, and find nothing in the same, either expressly, or by implication, forbidding a qualified consent to the construction and use of the road. The propriety and fitness of annexing conditions by which some control should be exercised by the municipal authorities over the running of the cars. in a city rapidly increasing in population and business, are too obvious to require argument. The charter confers on the company the power to construct a road, and to transport their cars by the force of steam, of animals, or of any mechanical power, or by any combination of them. But the sixteenth section forbids the construction of their road within the city without the consent of the city authorities. The terms or conditions of that consent are not prescribed, and would seem, therefore, to be left to be arranged and settled by the parties concerned. The burden lay upon the company to procure this consent, and, there being no restraint upon them in their charter, as to the terms they might choose to offer, nor upon the common council, in giving the consent, it was natural, and even a necessity, that the terms should be a matter of arrangement, and such as might be satisfactory to both of the parties. Therefore, I can see no reasonable objection, within the provisions of the act of 1831, to a consent originally on condition that steam power should not be used at all within the city, or that none but horse power should be used, or to the limitation .of the company to the use of any one of the descriptions of power enumerated in their charter; nor any objection to the reservation of the right to prohibit the use of steam power, when, in the judgment of the common council, its use should become inconvenient or detrimental to the public interests of the city.

Besides this view of the true meaning of the terms of the charter, it is a general principle, that an unrestricted power to make a grant or concession enables the party to make it upon conditions. In other words, a person possessing a given power may do less than such power enables him to do, in the execution of the same. "Omne majus in se continet minus."

Again, independently of the view above taken in respect to the power reserved to the city, to consent to the construction of the road, I am of opinion that the sixteenth section of the charter confers upon the common council the authority to forbid the running of locomotives on the road within the city, at any time when, in their judgment, the. interests of the public demand it. The section provides, that, after the road shall be constructed, the common council shall be authorized "to regulate the time and manner of using the same, and the speed with which carriages shall be permitted to move on the same, or any part thereof." The authority here conferred upon the city is ex-

ceedingly broad—to regulate the time and manner of using the road. "Manner of using" may very well refer to the description of power used to drive the cars—to the way or method of driving them. The use of the road contemplated by the act was by cars moved by steam, animal or mechanical power; and the authority to regulate the use, would seem not only fairly enough, but necessarily, to embrace the description of the power to be used, as well as supervision and control in the use of it; that is, whether it should be steam, or horse power, or any other contemplated in the charter. Regulating the use of the road does not necessarily mean a regulation of the different descriptions of power which the company are authorized to use. That would be a very restricted construction of the clause. The language is broad enough to include the nature and species of the power employed in using the road.

Upon the whole, I am satisfied that the authorities of the city had full power to pass the ordinance of the 27th of December, 1854, as it respects the Harlem Company.

(2.) The remaining question is, whether or not the New Haven Company possess any rights, in this respect, superior to the Harlem Company, so as to enable them to run their locomotives, against the ordinance of the city.

I agree, that the rights and powers of the New Haven Company depend upon the act of the legislature of New York, of March 29th, 1848, and are independent of the Harlem Company, and that the eighth section of that act does not, in terms, restrict those rights and powers to those possessed by the latter company. In other words, the New Haven Company do not come into the city under a grant from the Harlem Company, so as to be restricted to what that company can grant. But, construing the sixth section of the act of 1848, in connection with the charter of the Harlem Company (and they must be taken as acts in pari materia), I cannot resist the impression, that the meaning and intent of the legislature were to confer upon the New Haven Company no greater privileges than had been or might be conferred on the Harlem. They are authorized to run their cars, &c., over the road of the latter company, from the junction at Williams' Bridge, to the city of New York, and "as far into the said city as the said Harlem Company may extend." The power conferred on them is simply to use the Harlem road and nothing more, and they possess no right to construct a road in the city. And it would be singular, if the legislature had vested in the New Haven Company a right, as against the common council, superior to that of the Harlem Company.

Besides, I am of opinion, that both the New Haven Company and the legislature are to be presumed to have had a knowledge, at the time of the passage of the act

of 1848, of the limitation of the use of the road by the Harlem Company, and, hence, that the privileges granted should be construed as subject to such limitation. The act of 1831 reserved, in express terms, to the city, the right to consent to or prohibit the construction of the road, and the right to regulate the use of it after its construction. Of that act the New Haven Company and the legislature, of course, had notice, and it should be presumed that they inquired into the terms and conditions upon which the consent was given, and under which the road was constructed and the cars were run into the city.

Without pursuing the argument further, I am satisfied that the city authorities possessed the power to pass the ordinance of the 27th of December, 1854, and that the motion for the injunction should be denied.