## DANIELS vs. WILSON and others.

DEDICATION OF LAND—EVIDENCE—ESTOPPEL: (1.) *Effect of the words "Reserved Public Square" on village plat.* (2.) *Parol proof of dedication to a particular use.—Effect of deed to county for such use.* (3.) *Effect of conveyance of adjacent lots by deeds referring to the plat, after the recording of such deed to the county.*

1. The words "Reserved Public Square," written upon a block in the recorded plat of a village, do not clearly and necessarily import that it is dedicated to general public use; and it may therefore be shown by other evidence that the purpose was to dedicate it to one particular public use.
2. Thus, where a village so platted was a county seat, the fact that the dedication was for the use of the county in erecting county buildings, might be shown by the testimony of the proprietors as to their intention, and by proof that, a short time after the record of the plat, they deeded said block to the county for the purposes named, with a provision that if the village should cease to be the county seat, the deed should be void.

3. After the county seat was removed, the proprietors were not *estopped* from showing the real nature of the dedication as against their grantee of adjacent lots by deed referring to the plat, made *subsequent* to the recording of said deed to the county.

APPEAL from the Circuit Court for *Juneau* County. This action was brought by the plaintiff in his own behalf and that of all persons similarly interested, to restrain the defendants from erecting buildings upon block two in Wilson & Dunn's Addition to the village of New Lisbon, upon the ground that said block had been dedicated as a public square. The complaint avers a special interest on the plaintiff's part in the maintenance of such public use, arising out of the fact that he is the owner of two lots and a dwelling house, in an adjoining block, facing said block 2, the value of which would be diminished by the erection of buildings upon block 2. All the essential facts will sufficiently appear from the opinion, *infra.* The court found, *inter alia,* that the words "Reserved Public Square" were marked upon block two in the recorded plat of said addition, as early as October, 1859; that the same words were at the same time marked on the original plat, then and ever since held by said *Wilson,* and that he then had notice thereof; that *Wilson* had ever since assented to said plat remaining of record, and had sold to many different individuals lots in said addition, and in his deeds thereof had always referred to said recorded plat; that said plat had never been altered or vacated, and that said block 2 had always remained uninclosed, and been used as a common passage-way for foot passengers and teams, and as a place for ball playing and other amusements. As conclusions of law, the court held that *Wilson* had dedicated said block 2 to the public use as a public square; that by his acts he was estopped from asserting any claim thereto inconsistent with such public use, and that as against plaintiff and the public, the other defendants (claiming under the original proprietors) had no right

to occupy said premises. Judgment for the plaintiff; and the defendants appealed.

*Prentiss & Holmes* (with *S. U. Pinney*, of counsel), for appellants, argued, among other things, that in the conveyances made by *Wilson*, the reference to the plat in the register's office was made merely as a means of identifying the lots conveyed, and is no admission of the validity of the plat as a grant to the public (2 Wis. 153, 186, 187; 2 Doug. 256, 271; *Vilas v. Reynolds*, 6 Wis. 214); that even if the plat was properly executed, acknowledged, etc., and if the words "Reserved Public Square" were *then* upon it, still, unless some act of the public intervened before the date of the deed of block 2 to the county, that deed carried the title, and left nothing on which the plat could operate; that the title, in that case, remained in the county until the proprietors entered for breach of the condition subsequent, when it was restored to them (*Westfall v. Hunt*, 8 Ind. 174; *Logansport v. Dunn*, id. 378; *Lee v. Lake*, 14 Mich. 12; *Jackson v. Goodell*, 20 Johns. 187; *Harrison v. Trustees*, 12 Mass. 456); that the parol evidence of the intention of the proprietors, by the plat, to make the grant to the county in the same terms and upon the same conditions which were embodied in the deed, was competent and material (*Westfall v. Hunt*, 8 Ind. 174, 177, 384); that after the title to block 2 had vested in the county, if the words "Reserved Public Square" were (as the evidence shows) inserted in the plat without authority from the proprietors, they could not then, for want of interest, maintain any proceeding to cancel or vacate the plat, if such a proceeding had been necessary to their protection; but that it is not necessary that a party should seek affirmative relief against a forged grant.

*John Turner*, for respondent, argued that *Wilson*, with full notice that the plat contained the words "Reserved Public Square," caused it to be recorded, made it notice

to the public, sold the adjacent lots by it, and in his deeds referred to it, and is therefore now estopped from setting up title to such public square. Even though there was a mistake on his part as to the effect of the words on the plat, the rule is the same. *Weisbrod v. Railway Co.*, 18 Wis. 43, 44; *S. C.*, 21 id. 609; *Williams v. Smith*, 22 id. 594; *Cady v. Conger*, 19 N. Y. 256. 2. Whether *Wilson* did or did not in fact dedicate this land to the public, the plaintiff, deriving title from his grantee, has been led by his acts to believe that he had made such dedication; and to permit him now to assert title would be an irreparable injury to the plaintiff and all citizens similarly situated. 3. For ten or twelve years this land has been treated as public property, being used as a public square, and exempted from taxation, and this is a sufficient acceptance of the dedication, by the public.

COLE, J. For the purposes of this case we shall assume that the plat of New Lisbon which was offered in evidence was properly made out, certified, acknowledged and recorded according to the requirements of the statute. We shall also assume that the words " Reserved Public Square " were upon the plat when it was executed and acknowledged by the proprietors; although there is strong testimony in the case which tends to show they were not there at that time, but were subsequently placed there by some one without their knowledge or consent. But, assuming that these words were on the original plat when executed, we still think that they do not necessarily imply that it was the intention of the proprietors to dedicate the square to the public for general purposes, and that it was competent to show that the object of the donation was for a particular public use. The plat was made and recorded on the 6th of September, 1859, upon which it is claimed that block two was designated and marked " Public Square," or " Reserved

Public Square." On or about the 12th of October, 1859, the proprietors conveyed block two to the county of Juneau, with a proviso in the deed as follows: "Provided, always, that this land is sold for county purposes so long as the county seat remains in New Lisbon, and if at any time the county seat is removed from said village, then this conveyance to be void and of no effect, and the land reverts to the said parties of the first part." This deed was upon record when the proprietors conveyed lots nine and ten, in block five, to Lucinda Field, August 7, 1860, from whom the plaintiff derives title to those lots through sundry mesne conveyances. When the plat was made, September, 1859, New Lisbon was the county seat of Juneau county, and the defendant *Wilson*, who was one of the original proprietors, testified that the land was platted "for the purpose of giving block two to the county for the purpose of building the county buildings upon it." And that it was the intention of the proprietors to dedicate block two, not to general public use as a public square, but to a special public use, namely, "for the purpose of building the county buildings upon it," is a fact conclusively established by the evidence in the cause. There was no act of the proprietors, after the recording of the plat and before executing and recording the deed to the county, inconsistent with the intent on their part to limit the dedication to this particular public use. And the question therefore is, Can they show this intention by parol evidence, and that the block was devoted to the use of the public for the erection of the county buildings thereon, and was not dedicated to the public generally? We think it was competent to show this by parol testimony; and that this intention was conclusively proven on the trial cannot be denied.

If the words "Reserved Public Square" clearly and necessarily imported that the block was dedicated to

general public use, it would not be competent to change or vary the meaning of the words by parol testimony. But those words themselves do not sufficiently define and indicate the public purpose for which the block is reserved. Devoting the square to the use of the county as the place where the county buildings were to be erected, is certainly appropriating it to a public purpose. And while the block was thus occupied by the county buildings and for the use of the county, it would be a "public square" and the public would have the benefit of it. The use to which it was applied would be the one to which it was originally dedicated, and strictly consistent with the words on the plat, "Reserved Public Square." So that parol testimony offered to show the special public purpose to which the square was dedicated, is not contradicting or changing the words on the plat. It is merely showing the particular public use to which the ground in question was originally dedicated, and for what public purpose it must be applied. The words "Reserved Public Square" are indefinite in meaning, or certainly do not indicate whether the ground is to be appropriated to the use of the county for the erection of buildings thereon, or whether it is to be used solely for pleasure grounds and as a public square, with ornamental trees, walks, etc. And that parol testimony was admissible to show the object of the dedication, and the particular public use to which it was devoted by the proprietors, we have no doubt. See the cases of *Westfall v. Hunt*, 8 Ind. 174; *Logansport v. Dunn*, id. 378; *Lee v. Lake*, 14 Mich. 12, cited upon the brief of counsel for the defendants.

That there is no ground for holding that the defendants are estopped from showing the particular public use to which the square was dedicated, seems to us equally plain. For, as already observed, when the original proprietors conveyed lots nine and ten, in block five, to Lucinda Field, the deed to the county

was on record, showing that the square had been conveyed to the county for county purposes, and that if at any time the county seat was removed from New Lisbon, then the title to the square was to revert to the original proprietors. This deed plainly shows that it was not their intention to dedicate the square to general public uses, but that it was devoted to special public purposes. While the county should use the square for its county buildings, so long it would remain a public square. When it ceased to be used for that purpose, and the county seat was removed elsewhere, then the title was to revert. It is difficult to conceive of anything the original proprietors could do better calculated to inform all persons of the particular public purpose to which the square was dedicated, than the execution and recording of this deed made to the county.

Upon the whole case, we think the judgment of the circuit court must be reversed, and the cause remanded with directions to dismiss the complaint.

*By the Court.*—So ordered