## PEPIN COUNTY vs. PRINDLE.

*October 14 — November 6, 1884.*

*Deed — Condition subsequent — Maintenance of court house — Removal of county seat.*

Land at a county seat was conveyed to the county in August, 1871, upon the express condition that the county "erect thereon within five years a court house for the use of said county, and keep and maintain the same thereon for the space of ten years." A court house was thereupon erected upon such land, which was completed in March, 1874, and was used as such by the county until December, 1881, when the county seat was removed to another village. The building was then used merely to store some articles belonging to the county, until January, 1883, when the district attorney, under the direction of the county board, but against the protest of the grantor who claimed a forfeiture, took possession of the building and occupied one room therein as his office until August, 1883, when the grantor re-entered and took possession of the premises. *Held,* that the condition in the conveyance was valid, and that the removal of the county seat necessarily operated as a breach thereof.

Pepin County vs. Prindle.

APPEAL from the Circuit Court for *Pepin* County.

Ejectment. The complaint was in the usual form. The answer admitted the organization of the plaintiff county, and denied generally all other allegations of the complaint. A jury was waived. The following facts were admitted and agreed upon by stipulation of the parties:

On the 13th of August, 1871, the defendant, who was then the owner of the lands in question, conveyed the same to the plaintiff county by a quitclaim deed, "upon the express condition and term that the said county of *Pepin* erect thereon within five years a court house for the use of said county, and shall keep and maintain the same thereon for the space of ten years, upon the express condition." The consideration expressed in the deed was one dollar. In 1873 the county commenced the erection of a court house on the premises, which was completed, at a cost of about $7,000, in March, 1874, the county thereby in all respects performing the condition of the deed, so far as it required the erection, within five years from its date, of a court house for the use of the county. At the time of the execution and delivery of the deed the town of Durand, in which the land was situated, was, and for several years prior thereto had been, the county seat of *Pepin* county. Upon the completion of the court house in March, 1874, the county immediately entered into the possession and use of it, and used and occupied it continuously as a court house and for offices for the county officers until December 15, 1881, at which time the village of Arkansaw became the county seat of the county in pursuance of the laws prescribing the mode of change and removal of county seats; the vote upon the question of removal being taken November 8, 1881, and the proclamation of the removal as the result of such vote being published December 15, 1881. Upon the removal of the county seat as aforesaid, the records, books, and papers of the several offices of the county were at once removed

Pepin County vs. Prindle.

to the village of Arkansaw; and after that time the said court house building remained vacant and unoccupied and unused by the county, except for the storage therein of some chairs, desks, and other personal property belonging to the county, until January 5, 1883, when, in pursuance of a resolution and order of the county board of supervisors, the district attorney of the county took the charge, care, and possession of the building, and held, used, and occupied one room in said building for his office as such district attorney, the defendant at the time protesting against such use, possession, and occupancy, claiming that he was entitled to the possession of the premises because the county had broken the condition of the deed and forfeited its title, and stating that he had taken possession of the building. On the 15th of August, 1883, while the district attorney was casually absent from the building for a few hours, the defendant entered and took possession thereof, and excluded the district attorney therefrom, and has since withheld the possession from the county, claiming title solely upon the ground of a forfeiture for an alleged breach of condition in the deed. Ever since the erection and completion of said court house building it has remained and been kept on the premises in good order and repair, and suitable and proper for use. The land in question comprised one and one half acres, and at the time of the conveyance to the county was vacant, unimproved land. This action was commenced August 29, 1883.

Upon the foregoing facts the circuit court held that the defendant was the owner of the land and entitled to the possession thereof. From a judgment accordingly the plaintiff appealed.

*L. M. Vilas*, of counsel, for the appellant, contended, *inter alia*, that if the condition of the deed be construed to require the county to keep and maintain the county seat at Durand for ten years, it was void as being unlawful and against public policy. So construed it amounted to a con-

tract or undertaking by the county, through its board of supervisors, to prevent, for ten years, the exercise by the legislature of one of its acknowledged powers, and to restrain the electors of the county from voting for any change of the county seat, during the same period, under the penalty of forfeiture by the county of the court house site and the building which it had erected at an expense of $7,000. If this condition, so construed, is valid, it would have been equally good had the period been extended to one hundred years or more, thus practically nullifying and setting at defiance the constitution and laws providing for the removal of county seats. *Atkinson v. Ritchie,* 10 East, 530; 2 Bacon's Abr. tit. CONDITION, K. Q. 2; Dyer's Rep. 26*b,* 28*b,* pl. 186; 4 Kent's Comm. 130; *Mitchell v. Smith,* 1 Bin. 110; *Meacham v. Dow,* 32 Vt. 721; *Nichols v. Mudgett,* id. 546; *Pingry v. Washburn,* 1 Aikens (Vt.), 264; *Gulick v. Ward,* 10 N. J. Law, 87; *Randall v. Marble,* 69 Me. 310; *Wheeler v. Moody,* 9 Tex. 372; *Banksdale v. Elam,* 30 Miss. 694; *Weathersby v. Weathersby,* 13 Smedes & M. 685; *Morse v. Ryan,* 26 Wis. 356; *Wight v. Rindskopf,* 43 id. 344. See, also, *St. Joseph & D. C. R. R. Co. v. Ryan,* 11 Kan. 602; *State v. H. & N. H. R. R. Co.* 29 Conn. 538; *Pacific R. R. Co. v. Seely,* 45 Mo. 212; *Williamson v. C., R. I. & P. R. Co.* 53 Iowa, 126; *Halladay v. Patterson,* 5 Or. 177; *Bestor v. Wathen,* 60 Ill. 138; *St. Louis, J. & C. R. R. Co. v. Mathers,* 71 id. 592.

For the respondent the cause was submitted on the brief of *Horace E. Houghton,* attorney, and *Henry Cousins,* of counsel.

CASSODAY, J. The deed of the land in question was given to the county by the defendant, August 13, 1871, "upon the express condition and term that the said county of Pepin erect thereon within five years a court house for the *use* of said county, and shall *keep and maintain the same* thereon for the space of ten years, upon the express condition." The

court house was commenced in 1873, and finished and completed in March, 1874, when the county entered upon and into the possession, use, and occupancy thereof as such court house, and continued to use the same as such until December 15, 1881, when the village of Durand, in which the land was situated, ceased to be the county seat, and the village of Arkansaw became such county seat, in pursuance of a vote of the electors of the county had and taken November 8, 1881, and the proclamation of the governor of the result of said vote and removal, published December 15, 1881; and thereafter the building was no longer used or occupied as a court house.    The county continued to store some items of personal property there, and January 5, 1883, the district attorney of the county began to occupy it and continued such occupancy until August 15, 1883, when the defendant re-entered and took possession of the premises, unless his protest and claim of possession, January 5, 1883, was such re-entry.

The learned counsel for the plaintiff frankly concedes that the conveyance was made upon condition subsequent and for a nominal consideration.    Being such, he is justified in claiming a strict construction.    *Horner v. C., M. & St. P. R'y Co.* 38 Wis. 174; *Lawe v. Hyde,* 39 Wis. 345; *Drew v. Baldwin,* 48 Wis. 532; *Wier v. Simmons,* 55 Wis. 643; *Mills v. Evansville Seminary,* 58 Wis. 135; *Barrie v. Smith,* 47 Mich. 130; *Doe v. Butcher,* 6 Q. B. 115.    Under such construction he claims there was no breach.    This is on the theory that the first condition in the deed was satisfied by the erection of the building, and the second by keeping and maintaining the building so erected without any reference to the county seat.    But, as observed by counsel, when the deed was given, Durand was, and for many years had been, the county seat.    At the time the deed was made, the county seat could not be removed until the point to which it was proposed to remove the same should be fixed by law,

and a majority of the voters of the county, voting on the question, should vote in favor of its removal to such point. Sec. 8, art. XIII, Const. But soon after the deed was given that provision of the constitution was amended so as to prohibit the legislature from enacting any special or private law "for locating or changing any county seat." Sec. 31, art. IV, Const. Thereupon, the legislature did, by general law, provide for locating and changing any county seat. Ch. 89, Laws of 1872; amended, ch. 407, Laws of 1876; sec. 655, R. S. Here, the "seat of justice" for Pepin county (sec. 4, ch. 15, Laws of 1858) was located and established at Durand prior to the deed, in accordance with the laws then in existence, and was removed from thence to Arkansaw in pursuance of the laws so enacted after the execution of the deed.

The statute provides, except in special cases, that "each county shall at its own expense provide at the county seat *a court house*, a jail, *fire proof offices*, and other necessary buildings suitable to their proper uses, and keep the same in good repair." Sec. 656, R. S. So the county court must be held at the county seat. Sec. 2440. These provisions are substantially the same as those in existence when the deed was executed. Sec. 16, ch. 13, sec. 1, ch. 117, and secs. 16 and 17, ch. 119, R. S. 1858. True, the words "at the county seat" were not found therein, but the statutes did provide, except in special cases, that every sheriff, clerk of the circuit court, register of deeds, county treasurer, and clerk of the board of supervisors should keep his office "at the seat of justice of his county, and in the office provided by the county." Sec. 156, ch. 13, R. S. 1858; sec. 700, R. S. The statute also provided that the county court should be held at the time and place established by law. Sec. 1, ch. 117, R. S. 1858, as amended. Of course, the courts were necessarily to be held at the seat of justice, because it was such holding in pursuance of law that characterized the place as

the *seat* of justice. So the building in which such courts were permanently held became, by virtue of such holding and the law authorizing the same, the court house. The mere fact that when the exigency of the case requires it the court may temporarily be held in a different building, does not prevent the building constructed for the courts permanently from continuing to be such court house, notwithstanding such building in which the courts are from necessity so temporarily held is to "be deemed the court house for the time being for all purposes." Sec. 656, R. S.

From all these things it is evident that a county can only have one county seat, and that the court house must be at the county seat, except in the special cases prescribed; when from necessity courts may be temporarily held elsewhere. None of the special cases prescribed in the statutes are applicable here. Durand ceased to be the county seat December 15, 1881, when Arkansaw became the county seat — the seat of justice for Pepin county. From that time the courts and offices of the county have been necessarily held at the latter place. At that place the courts of the county were necessarily held in a building known as and which in law constituted the court house of and for the county. Since that time the building in question has not in any sense been *the* court house nor a court house. The removal of the county seat necessitated the removal of the court house to the new seat of justice. Long prior to that, it had been erected as a court house for the use of the county, and kept and maintained as such until the removal of the county seat to Arkansaw. Since that time it has been an empty building where the courts had formerly been held. By the conditions of the deed, the county was not only to erect "a court house for the *use* of the said county" on the land in question, but was also to "*keep* and *maintain* the *same thereon* for the space of ten years." Obviously, the ten years did not begin to run until the court house was erected

in March, 1874, for it was the completed court house for the use of the county which was thus to be kept and maintained for the space of ten years. This the county failed to do, unless the mere fact that the building remained upon the land after the county seat had been removed to another village according to law was the keeping and maintaining of "a court house for the use of said county" on this land within the meaning of the language of the condition. Such a construction would do violence not only to the sense conveyed, but also to the language employed. It would be more narrow and technical than is implied in the word "strict" or "literal,"— it would be extremely finical. As the building was not kept and maintained as a court house for the space of ten years after its erection, we must hold that the second condition in the deed was broken. This condition, annexed to the grant, was not merely nominal, but substantial, within the meaning of sec. 2070, R. S. *Barrie v. Smith,* 47 Mich. 130.

The grantor never waived the condition by allowing the premises, with his knowledge and without his objection,. to be used for other purposes, or increased in value by permanent improvements. *Barrie v. Smith, supra; Sharon Iron Co. v. Erie,* 41 Pa. St. 341; *Hammond v. P. R. & A. R'y Co.* 15 S. C. 10; *Mills v. Evansville Seminary,* 58 Wis. 135; notes to *Gray v. Blanchard,* 1 Lead. Cas. Am. Law of R. P. 146–148; *Cross v. Carson,* 44 Am. Dec. 745–8; *Kenner v. Am. Cont. Co.* 9 Bush, 202. Here there was no change in the use of the building, nor any improvements put upon it, after the removal of the county seat, and prior to the time when the defendant actually re-entered,— certainly not prior to the time when he claimed possession by reason of the breach, and protested against the occupancy by the district attorney. This was equivalent to a re-entry. *Horner v. C., M. & St. P. R'y Co.* 38 Wis. 174; *Langley v. Chapin,* 134 Mass. 82; *Barrie v. Smith, supra; Gray v. Blanchard,*

1 Lead. Cas. Am. Law of R. P. 143, and cases there cited. The forfeiture of such condition is a matter of strict right, and cannot be defeated merely because the grantee paid a valuable consideration for the conveyance, or made valuable improvements on the land after obtaining the deed. *Rowell v. Jewett*, 71 Me. 408. The ownership of an absolute title in fee, with the right of disposition, includes the right to impose any condition not amounting to a restriction upon alienation, and which is not impossible, nor contrary to public policy, nor otherwise illegal. See notes to *Gray v. Blanchard*, 1 Lead. Cas. Am. Law of R. P. 127–136; *N. Y. & N. H. R. R. Co. v. Mayor*, 4 Blatchf. 193. There is no claim, nor any ground for claiming, that this deed contains any restraint upon alienation. *De Peyster v. Michael*, 57 Am. Dec. 470, and notes; *Pynchon v. Stearns*, 45 Am. Dec. 210.

The condition annexed to the grant was certainly not impossible. 2 Washb. Real Prop. (4th ed.) 8 (*447), note 6; *Chapman v. Pingree*, 67 Me. 198; *U. S. v. Arredondo*, 6 Pet. 745. The case of *Stevens v. Coon*, 1 Pin. 356, is clearly distinguishable. The county came very near performing the condition. Had the removal been delayed two and a half years longer, all the conditions of the deed would have been satisfied. Certainly, the performance was not prevented by the act of God nor the grantor. The county,— the grantee in the deed,— acting in accordance with law, both in its aggregate and corporate capacity, deliberately determined not to perform the second condition. A petition signed by the requisite number of legal voters, asking a change of the county seat from Durand to Arkansaw, was presented to the board of supervisors of the county. The board thereupon, in discharge of its duty, submitted the question of removal to a vote of the qualified voters of the county, in the manner provided by law. The majority of all the votes cast at such election on that subject being in favor of the proposed change, it was duly certified, attested,

and proclaimed. Sec. 655, R. S. Thus it was the county, acting both in its aggregate capacity and in its corporate capacity, that effected the removal and thereby broke the condition. It was a matter of choice with the county whether it performed the condition or not. It was probably with reference to this power of choice that the condition was imposed by the grantor. The grantee, having deliberately chosen not to perform, must abide the legal consequences of non-performance, whatever they may be.

The case is clearly distinguishable from *Lawe v. Hyde*, 39 Wis. 345, where the conveyance was in express terms for the *benefit* of the university, which was held not to imply that all the land should be occupied with the buildings, but that, some of it being so occupied, the balance might be rented or sold for the advantage of the institution. So the case is distinguishable from *Gilmore v. Hayworth*, 26 Tex. 89, where a tract of land was donated to the county for a county seat, "or for what other use the county may see proper to convert the same." In that case it was aptly said that "a distinction must be taken between the use declared in the deed and the motive or consideration which prompted the donation." There it was held that the motive failed, but the use continued. Here, the use failed, and the question is whether the condition was effectual. *Seebold v. Shitler*, 34 Pa. St. 133; *Supervisors of Warren Co. v. Patterson*, 56 Ill. 111; *Poitevent v. Board of Supervisors*, 58 Miss. 810.

Whether the county board had power to bind the county by covenant or agreement not to remove the court house is entirely a different question. We are free to say that we do not think the board possessed any such power. *Newton v. Commissioners*, 26 Ohio St. 618; *S. C.* affirmed, 100 U. S. 548; *Alley v. Denson*, 8 Tex. 297; *Gilmore v. Hayworth*, 26 Tex. 89; *Armstrong v. Board of Commissioners*, 4 Blackf. 208; *Adams v. County of Logan*, 11 Ill. 336; *Harris v. Shaw*, 13 Ill. 456; *Twiford v. Alamakee Co.* 4 Greene (Iowa),

60. From the authorities it pretty clearly appears that the power of removal given by law cannot be destroyed nor frustrated by any agreement, covenant, or condition. We are equally certain that in this case the board did not undertake to assume or exercise the power of binding the county not to remove the county seat or the court house. *Langley v. Chapin,* 134 Mass. 82; *Blanchard v. D., L. & L. M. R. R. Co.* 31 Mich. 43; *Sharon Iron Co. v. Erie,* 41 Pa. St. 341; *Hammond v. P. R. & A. R'y Co.* 15 S. C. 10; *Gray v. Blanchard,* 1 Lead. Cas. Am. Law of R. P. 115; *Cross v. Carson,* 44 Am. Dec. 745; *Alley v. Denson,* 8 Tex. 297; *Gilmore v. Hayworth,* 26 Tex. 89.

In *Langley v. Chapin,* 134 Mass. 82, the conveyance was upon condition that the grantee would erect upon the premises a cotton factory within two years from the date thereof, and it was held to be a condition subsequent and not a covenant. In *Blanchard v. D., L. & L. M. R'y Co.* 31 Mich. 43, the conveyance was upon condition, that the company should build, erect, and *maintain* a depot on the land, and it was held to be a condition subsequent and not a covenant. In *Hammond v. P. R. & A. R'y Co.* 15 S. C. 10, the condition was that a certain system of draining should be kept up by the railway company, and it was held to be a condition subsequent, and the deed voidable by the grantor upon condition being broken. In *Gray v. Blanchard* the condition was that no window should be placed in the north wall of the house on the land conveyed for thirty years, and it was held to be a condition subsequent and not a covenant. In the case before us there is no agreement, covenant, promise, or undertaking upon the part of the grantee to do anything, much less to erect or keep or maintain the court house at Durand.

The condition imposed was not contrary to public policy. This appears from a multitude of cases. *State ex rel. Park v. Supervisors,* 24 Wis. 49; *Daniels v. Wilson,* 27 Wis. 492;

*State ex rel. Newell v. Purdy*, 36 Wis. 225; *Police Jury v. Reeves*, 6 Mart. La. (N. S.), 221; *Gilmore v. Hayworth*, 26 Tex. 89; *Armstrong v. Board of Commissioners*, 4 Blackf. 208; *Alley v. Denson*, 8 Tex. 297; *Adams v. County of Logan*, 11 Ill. 336; *Harris v. Shaw*, 13 Ill. 456; *Kenner v. Am. Cont. Co.* 9 Bush, 202; *Adams v. Lindell*, 5 Mo. App. 198; *Twiford v. Alamakee Co.* 4 Greene (Iowa), 60; *Dishon v. Smith*, 10 Iowa, 212; *County Commissioners v. Hunt*, 5 Ohio St. 488; *Seebold v. Shitler*, 34 Pa. St. 133; *Calaveras Co. v. Brockway*, 30 Cal. 326; *Hall v. Marshall*, 80 Ky. 552; *State ex rel. Bill v. Elting*, 29 Kan. 397; *S. C.* 16 Cent. L. J. 176.

In *State ex rel. Park v. Supervisors*, 24 Wis. 49, it was held by this court that the legislature might impose as a condition precedent to the removal of a county seat to a certain city, that the county seat should not be removed, notwithstanding a majority of the votes in its favor, until such city should place at the control of the county supervisors a specified sum of money. If such a condition in the law authorizing the removal of the county seat was not contrary to public policy, then it would seem that the condition in the deed before us was not. Following that case, it was said by this court, in effect, in *State ex rel. Newell v. Purdy*, 36 Wis. 225, that "we have no controversy with" the cases "which have sustained the validity of bids or pecuniary offers to secure the location of public buildings at some particular place." "The mere choice of a site for a public building" "is only a matter of public convenience or pecuniary interest, involving no fundamental principles whatever." These principles have been sanctioned by the supreme courts of Kansas and Kentucky, in cases above cited. The question is fairly stated in the opinion of Judge BREWER in the late case of *State ex rel. Bill v. Elting*, 29 Kan. 397: "There is no question of moral character or personal fitness involved; the question is really and solely one of convenience and material advantages. A

state capital or a county seat is selected because of the supposed material advantages it offers for the transaction of public business. Among these are centrality of location, convenience of access, the number and condition of the roads leading to and from it, the halls, office-rooms, hotels, and other conveniences which it may have for the accommodation of those having occasion to visit such capital or county seat, and for the transaction of public business there. It is therefore primarily, if not solely, a question of material advantages, and an offer by a municipality or any of its citizens to increase those advantages, introduces no foreign or improper matter to the consideration of the voter." This is substantially the ruling in the other cases above cited.

Certainly, such a condition in the deed was not in the nature of a bribe to the voters. *Hall v. Marshall*, 80 Ky. 552; *Dishon v. Smith*, 10 Iowa, 212. The condition here is substantially the same as in several of the cases where it was held valid. *Police Jury v. Reeves*, 6 Mart. La. (N. S.), 221; *Twiford v. Alamakee Co.* 4 Greene (Iowa), 60. The same principle has been sanctioned in other cases cited. *Harris v. Shaw*, 13 Ill. 456; *Adams v. County of Logan*, 11 Ill. 336. It may be observed that as there can be but one county seat in a county, and as the business of the county and the courts can presumably be administered just as faithfully and honestly in one place as another, such gifts and conditions to secure the location in no way tend to influence the courts or officers in the discharge of any public duty, but are merely taken into consideration by the voters themselves in determining the advantages and disadvantages which one place has over another. The cases cited by counsel where a deed has been given on condition that a depot be located at a particular place and no other within a certain number of miles of such place, as in *Williamson v. C., R. I. & P. R. Co.* 36 Am. Rep. 206, are clearly distinguishable.

The statute expressly recognizes the right of a county to

receive the title of land by donation for special purposes, and, in effect, prohibits the sale thereof. Sec. 653, R. S. This statute, in effect, authorizes the acceptance of deeds donating lands for special purposes, on conditions subsequent, like the case before us. In some states the acceptance of such deeds is expressly forbidden by statute. Of course, decisions under such statutes are clearly distinguishable. *Rogers v. Sebastian Co.* 21 Ark. 440. But this opinion is already too extended. It is enough to say that we discover nothing illegal in the condition here imposed.

*By the Court.*— The judgment of the circuit court is affirmed.