The State ex rel. Wildman, Appellant, vs. Kidd and another, Supervisors, etc., Respondents.

*April 30 — June 1, 1885.*

*School districts: Division: Surrender of rights in property.*

1. No agreement or condition recited in the order for the division of a school district will relieve the town board from its duty, under secs. 420, 421, R. S., to determine the proportion of the value of the school-house and other property justly due to the new district.

2. An agreement to consent to the division of a school district in consideration of the surrender of property rights by the new district, is contrary to public policy and void.

3. The petitioners for the division of a school district cannot, by any agreement to surrender its property rights, bind the new district thereafter created by such division.

APPEAL from the Circuit Court for *Grant* County.

The case is thus stated by Mr. Justice Cassoday:

" *Mandamus.* The defendants made return or answer to the relation, and the relator replied to the return. Upon the issues thus formed, the cause was tried by the court; and from the facts admitted in the pleadings and found by the court, and the evidence, it, in effect, appears:

" That during the times in question the relator and the defendants were each and all supervisors of the town of Glen Haven, and together constituted the town board of that town. That prior to April 23, 1881, there was in that town a school district known as No. 4, but none known as No. 3. That several weeks prior to the day mentioned,

certain resident freeholders of district No. 4, living within the limits of what is now known as district No. 3, petitioned the town board to divide said old district No. 4, and form therefrom a new district to be known as No. 3; but the district board of said old district No. 4 having remonstrated against such division, the said supervisors of the town then refused to divide the district. That the officers of said old district No. 4 thereafter, and before the day mentioned, expressed a willingness that such division should be made, if the proposed new school district No. 3, to be thereby formed, should have no part of the funds and property of old district No. 4 then on hand, but otherwise absolutely refused to consent to the division; and the town board refused to set off such new district except with the consent of the school board of said old district No. 4. That afterwards, and prior to the day mentioned, a new petition was presented to the town board by the freeholders of said old district No. 4, residing within what are now the limits of new district No. 3, asking said town board to set off such territory, and form such new district No. 3.

"That upon the hearing of said last-mentioned petition by and before the town board, the school board of the old district No. 4 consented to the petition being granted, provided the new district should surrender all claim to the property of the old district. That thereupon the relator, who was one of such petitioners, and a Mr. Myers, another of such petitioners, agreed to such surrender with said school board of the old district No. 4, and then expressed to the town board a willingness to surrender all claim to the property of old district No. 4, and stated that they would be satisfied with the territory alone, if there was any objection on that ground. That thereupon, and on said April 23, 1881, the said town board made the following order and determination (omitting the venue and description) to wit: 'It is hereby ordered and determined that the

[territory described] shall hereafter constitute a school district to be known as school district number three (3) of the town of Glen Haven. Said school district number three (3) *surrenders all claim to the school property* of school district number four (4) of the town of Glen Haven. Given under our hands this 23d day of April, 1881. J. S. KIDD, JACOB ACKERMAN, WILLIAM WILDMAN, Town Board of the Town of Glen Haven.'

"That pursuant to this order said school district No. 3 was organized. That on that day, and before such division, the assessed valuation of all the taxable property in said old district No. 4, by the assessment roll of the town for 1880, was $102,475, and on that day such valuation of all such property left therein after such division, was, by said roll, the sum of $77,745, and such valuation of all such property in said new district No. 3, so formed, was then, by said roll, the sum of $24,730. That at the time of said division the total property of the old district consisted of a balance of the general fund of $20.21; also of a building fund, in the hands of its treasurer, amounting to $605.74, of which $600 had been raised by tax for the purpose of building a new school-house; the old school-house of the old district having been sold by new district No. 4, since the division, for $30. That prior to said division said district No. 4 had, for the purpose of building and completing said new school-house, duly resolved to borrow the sum of $800, in addition to said building fund then in the treasury, which sum of $800 was to be repaid in two equal instalments on January 20, 1882, and January 20, 1883, by a tax which the resolution directed to be levied in the years 1881 and 1882. That, at the time of said division, said $800 had not been borrowed, but was subsequently borrowed by new district No. 4.

"That the money in the treasury, and the old school-house, and the money obtained therefor, had been retained

by new district No. 4, and no part of it ever given or turned over to new district No. 3. That neither at the time of the division nor since had the town board ascertained or determined the proportion of the value of the school-house and other property belonging to old district No. 4, prior to such division, justly due or belonging to new district No. 3, according to the taxable property of the respective parts of such former district, notwithstanding the relator, as one of said board, then expressed a willingness so to do, but the said *Kidd* and *Ackerman* refused so to do. That said town board did not certify, and never have certified, to the clerk of the district so retaining said school-house and other property, the amount, or any amount, ascertained by them as the proportion of said school-house and other property to be paid to said new district No. 3, notwithstanding the relator, as one of said board, then expressed a willingness so to do; but the said *Kidd* and *Ackerman* refused so to do, and still refuse so to do, although often urged by the relator to do so. That since the organization of said new district No. 3 the relator has been the director thereof, and as such has urged and demanded of said defendants, as members of said town board, to so ascertain and determine such proportion, and so certify, but they have always neglected and refused so to do, and still do so refuse and neglect; and that this relator, by direction of said new district No. 3, brings this suit as such director.

"As conclusions of law the court found that the relation of the relator should be dismissed upon the merits, with costs; and judgment of dismissal was accordingly rendered, from which the relator appeals."

For the appellant there was a brief by *Bushnell & Watkins*, and oral argument by *Mr. Bushnell*.

For the respondents there was a brief by *Orr & Lowry*, and oral argument by *Mr. Lowry*.

CASSODAY, J.  No question is made as to the regularity of any of the proceedings in dividing the old district or in the organization of the new.  The $800 which the old district resolved to borrow prior to the division was not borrowed until after the division.  This being so, the district had not, by vote prior to the division, contracted a debt for the same within the provisions of sec. 412, R. S., and hence there was no impediment to the division at the time it was made.

The only question presented for consideration is whether new district No. 3 is barred of all right to any of the property belonging to the old district at the time of the division, merely because two of the petitioners for the new district, in order to secure the consent of the school board of the old district to the proposed division, agreed with them that the new district No. 3 should surrender all claim to such property, and consented that such surrender should be recited in the order dividing the old district, which was done. Was such agreement and recital conclusive upon the new district?  The town board derived its power to form and alter school districts wholly from the statutes.  Sec. 412. The formation of such district was necessarily made by written order of the town board.  Sec. 413.  The consent of the district board to the proposed alteration was not absolutely essential.  Sec. 419.  Whenever a new district is formed, in whole or in part, from one or more districts, possessed of a school-house or entitled to other property, the town board of the town in which such district is situated, at the time of forming such new district, is expressly charged by statute with the duty of ascertaining and determining the proportion of the value of the school-house and other property justly due to such new district, according to the taxable property of the respective parts of such former district at the time of the division, by the best evidence within their reach, and such amount of any debt due from the former district which would have been a charge upon

the new had it remained in the former district, shall be deducted from such proportion.   Sec. 420.

It stands confessed that such proportion was not so ascertained or determined in the case before us.   On the contrary, it is admitted that the defendants refused to perform such statutory duty.   Not only was it the duty of the town board to so ascertain and determine such proportion, but the statute imperatively declares that such board shall certify to the district clerk of the district retaining a schoolhouse or other property, the amount so ascertained by them as the proportion to be paid to the new district.   Sec. 421. These duties the defendants not only failed to perform but absolutely refused to perform.   Were they excused from the performance of such public duties by reason of the agreement made between the two petitioners and the school board?   Could they be excused even if they were to be regarded as parties to the agreement?   Could they by contract bind themselves not to do the duties which, by the acceptance of their offices, they were thus expressly required by statute to do, and which no one else could do? Can a public officer by any contract deprive himself of the right to perform the duties of such office?   Of course, he may make a contract so vicious as to authorize his removal from office.   But it is contrary to public policy that municipal officers, or any other public officers, should make any contract which would in the least interfere with the performance of their official duties.

We recently had occasion to consider a different but somewhat similar question in *Pepin Co. v. Prindle*, 61 Wis. 310.   It was there pretty strongly intimated, if not held, that the county board possessed no power to bind the county by covenant or agreement not to remove the courthouse; that the power of removal given by law could not be destroyed or frustrated by any agreement, covenant, or condition.   Several cases are there cited in support of such

propositions.    We are equally clear that the town board in this case could not, by any agreement or condition recited in the order of division, get out from under the duties and obligations imposed upon them by the sections of the statutes cited.    In addition to the cases cited in *Pepin Co. v. Prindle, supra,* see *Louisville City R. Co. v. Louisville,* 8 Bush, 416; *Martin v. Mayor,* 1 Hill, 545; 1 Dill. Mun. Corp. §§ 445, 446, 458.

In deciding upon the question of division the town board had no right to be actuated by any motive or consideration other than for the public good.    If such division would, in their judgment, be for the public welfare, then they had no moral right to exact a pecuniary consideration from one district to the other as a condition of making it.    If, on the contrary, such division would, in their judgment, be detrimental to the public good, then they were morally bound not to make it, even though the school board and the factions of the old district were induced to consent to such division by reason of a promised pecuniary consideration from one of the new districts to the other.    In other words, they were bound to perform their statutory duties as such officers, and for the public good, regardless of any agreement for any pecuniary consideration passing between the new districts.    It is the policy of the law that all who are active in opposition to such division, whether members of the school board or otherwise, as well as all who are active in trying to procure such division, shall act in good faith; and any agreement to combine in opposition to such division or consent thereto, in consideration of money to be paid, or property or rights of property to be surrendered, is contrary to public policy and therefore void.    *Howard v. First Ind. Church,* 18 Md. 451; *McGuire v. Smock,* 13 Am. Rep. 353; *Ohio L. Ins. & T. Co. v. Merchants' Ins. & T. Co.* 53 Am. Dec. 742; *Foll's Appeal,* 36 Am. Rep. 671;

*Field v. Chipley,* 42 Am. Rep. 215; 1 Dill. Mun. Corp. § 457.

But even if the parties, at the time, had been capable of making a binding contract of the character indicated, yet the relator and Myers would have had no power to surrender such rights of property without being specially authorized by the new district No. 3. Such authority cannot be presumed in those assuming to act under a naked power, merely because there was an expression of willingness on their part to exercise it. *Mayor v. Musgrave,* 48 Md. 273; *Williams v. Peyton's Lessee,* 4 Wheat. 77; 1 Dill. Mun. Corp. §§ 447, 457. But the relator and Myers were not either of them officers of new district No. 3 at the time, and hence, in their individual capacity merely, were incapable of acting for or binding such district. *Haliburton v. Frankfort,* 14 Mass. 214; 1 Dill. Mun. Corp. § 455.

There is still another difficulty. At the time of the agreement in question new district No. 3 had no corporate existence, aggregate or otherwise. Having no existence, it was incapable of acting or contracting for itself, much less capable of authorizing others to act or contract for it.

The result is that the so-called agreement was not binding upon the town board, but was contrary to public policy, was without authority, and was wholly nugatory as to new district No. 3. It follows that the recital of surrender in the order was inoperative. In fact, it had no more force than a recital therein would have had, that John Doe had surrendered all claim to his property in the hands of Richard Roe. True, the relator participated in and was one of the parties to the unlawful agreement, but he is not here seeking anything in his own right, nor for his own personal benefit. He is here in behalf of new district No. 3, which was not a party to the agreement and is in no manner bound by it.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded, with direction to grant a writ of *mandamus* against the town board of the town of Glen Haven, commanding it to do and perform its statutory duties as indicated in this opinion.